## NATIONAL CLAY PRODUCTS CO. v. HEATH UNIT TILE CO.
### No. 8645.

Circuit Court of Appeals, Eighth Circuit.

April 10, 1930.

Butler, Lamb, Foster & Pope, of Chicago, Ill., and Breese & Cornwell, of Mason City, Iowa, for appellant.

Robert M. Witwer, of Mason City, Iowa (John A. Senneff, William L. Bliss, and John A. Senneff, Jr., all of Mason City, Iowa, and Justin W. Macklin, of Cleveland, Ohio, on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and DAVIS, District Judge.

STONE, Circuit Judge.

Appellee is the owner of several patents covering shapes of hollow tile used in masonry construction and commercially known as Heath tile. Its business is largely that of making license contracts permitting manufacturers of such clay products to operate under the patents owned by it. Appellant is a manufacturer of clay products, including hollow tile, with its main plants and business located at or near Mason City, Iowa. These plants formerly belonged to National Clay Works, a corporation. This action was brought by appellee against appellant and the National Clay Works to secure a decree adjudicating the cancellation of a license contract between appellee and the National Clay Works and to restrain interference with other licensees of appellee in the territory covered by the above contract. From a decree according the above relief, this appeal is brought by the National Clay Products Company.

### Jurisdiction.

Appellant contends that there is lack of jurisdiction in the trial court of the subject-matter involved in this suit. This action was brought in the state court and removed thence to the United States District Court. The contention of appellant is that this is an action involving a patent, and that exclusive jurisdiction of such an action is placed in the United States courts by section 24 of the Judicial Code (USCA tit. 28, § 41 (7); that the United States court, on removal, could take and have only such jurisdiction as the state court could have had; that, since the state court could have had no jurisdiction of such subject-matter, the United States court could derive none through the removal.

We need not examine whether a federal court, which might have had jurisdiction had the suit been filed therein, could have jurisdiction, on removal, if the state court could not, because it is clear that the state court had jurisdiction of the subject-matter here. "Jurisdiction generally depends upon the case made and relief demanded by the plaintiff. * * *" Healy v. Sea Gull Specialty Co., 237 U. S. 479, 480, 35 S. Ct. 658, 659, 59 L. Ed. 1056; also, Odell v. Farnsworth Co., 250 U. S. 501, 503, 39 S. Ct. 516, 63 L. Ed. 1111; Henry v. Dick Co., 224 U. S. 1, 14, 16, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880. This action is based solely

upon the license contract. The sole relief sought is in connection with that contract. Where the suit is on a contract relating to a patent and is not for infringement (Healy v. Sea Gull Specialty Co., supra), nor on a contract of assignment of a patent (Crown Die, etc., Co. v. Nye, etc., Machine Works, 261 U. S. 24, 43·S. Ct. 254, 67 L. Ed. 516), jurisdiction of such subject-matter is unaffected by federal statutes (Odell v. Farnsworth Co., 250 U. S. 501, 39 S. Ct. 516, 63 L. Ed. 1111; Briggs v. United Shoe Mach. Co., 239 U. S. 48, 36 S. Ct. 6, 60 L. Ed. 138; Geneva Furniture Mfg. Co. v. Karpen, 238 U. S. 254, 259, 35 S. Ct. 788, 59 L. Ed. 1295; Henry v. Dick Co., 224 U. S. 1, 13, 14, 32 S. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880; New Marshall Co. v. Marshall Engine Co., 223 U. S. 473, 478, 32 S. Ct. 238, 56 L. Ed. 513; Bement v. National Harrow Co., 186 U. S. 70, 22 S. Ct. 747, 46 L. Ed. 1058; Excelsior Wooden Pipe Co. v. Pac. Bridge Co., 185 U. S. 282, 285, 22 S. Ct. 681, 46 L. Ed. 910; and many others). The first case in the long line announcing the above rule was one involving a license contract for use of a patent. Wilson v. Sandford, 10 How. 99, 13 L. Ed. 344.

The action was properly brought in the state court, and the jurisdiction properly lodged in the United States court, by removal proceedings, on the ground of diverse citizenship.

### Attack upon Patents.

■ Upon motion, the court struck from the amended answer averments challenging the validity of two of the patents covered by the license. This portion of the answer is based on a rather singularly stated alternative proposition, to wit: "That if there be no subsisting contract embracing a license to ·this defendant under plaintiff's patents, and protecting defendant against any charge of infringement of said patents, and if plaintiff nevertheless asserts a right to injunctive relief against defendant arising out of said patents, then, for further answer, with the same reservations as hereinbefore made, defendant avers * * * that said patents are invalid. * * *"

The defense and counterclaims of defendant are based upon the insistence that the license is subsisting in it. Such being its position, and it being in the attitude of a licensee, it is estopped to deny the validity of the patents covered thereby. United States v. Harvey Steel Co., 196 U. S. 310, 25 S. Ct. 240, 49 L. Ed. 492; Kinsman v. Parkhurst, 59 U. S. 289, 292, 293, 15 L. Ed. 385; H. C. White Co. v. Morton E. Converse & Son Co., 20 F.(2d) 311, 313 (C. C. A. 2); Victory, etc., Co. v. O. & J. Mach. Co., 280 F. 753, 759 (C. C. A. 1); Kohn v. Eimer, 265 F. 900, 904 (C. C. A. 2); Miami Cycle Co. v. Robinson, 245 F. 556, 565 (C. C. A. 6); Chicago & A. Ry. Co. v. Pressed Steel C. Co., 243 F. 883, 887 (C. C. A. 7); Tate v. B. & O. R. R. Co., 229 F. 141, 142 (C. C. A. 4); Indiana Mfg. Co. v. J. I. Case Mfg. Co., 154 F. 365, 370 (C. C. A. 7); Holmes, B. & H. v. McGill, 108 F. 238, 244 (C. C. A. 2).

Furthermore, the license contract itself provided: *"Validity of Patents.* The licensee hereby acknowledges the validity of the Letters Patent, for the full term thereof, and agrees at no time either directly or indirectly to attack or question the validity thereof."

Appellant cannot claim that it is a licensee under and because of this contract and, at the same time, violate that contract in a very essential provision thereof.

### Merits.

■ The allegations of the petition may be briefly summarized as follows: Prior to 1924, several brothers, named Keeler, were engaged in operating brick and tile plants through corporations largely located in or near Mason City, Iowa. This business was rather extensive, and included the manufacture of hollow tile used in masonry construction. This tile was of a character directly competitive with that covered by the patents of appellee. In the latter part of 1924, appellee, being desirous of procuring the manufacture of tile under its patents at Mason City for distribution in adjacent trade territory, opened negotiations with the National Clay Works. Knowing that there would be direct competition with the Keeler products, appellee was solicitous that such competition should be genuine and that any licensee of its patents in that trade territory should in no way be subject to the influence of the Keelers, who would be active competitors. Therefore they particularly inquired whether the Keelers or any one connected with them had any kind of interest whatsoever in the National Clay Works. Upon the assurance of the president, Potter, and the secretary-treasurer, Pearce, of the National Clay Works, that there was no connection of any kind, appellee granted a license to the National Clay Works. This license accorded the exclusive right of manufacture and sale,

under the patents, in a designated territory. The licensee was to pay a named royalty, and was required to "maintain an efficient sales effort to properly bring the tile before architects, contractors and owners." A right of cancellation was given to the licensor if the licensee should fail in such marketing requirements. It was provided that "no assignment or transfer of this agreement in part or whole will be binding unless approved by the licensor." The petition further alleges that, after the contract had been in force more than sixteen months without the licensee in any wise performing or attempting to perform the contract, the licensor, on March 7, 1926, notified the licensee that it canceled the contract in so far as the license was exclusive, but would permit the licensee to continue the manufacture and sale under a new agreement to be prepared, if this licensee would indicate its desire to do so; that later, in September, 1926, appellee first ascertained that the property and business of the National Clay Works, including this license contract, had been transferred by deeds, bills of sale, and assignments to appellant, National Clay Products Company, and, thereupon, appellee served written notice upon both such companies of its refusal to approve such assignment and of its final and complete cancellation of the license contract; that thereafter appellee entered into various license contracts with named companies operating in the territory covered by the former above license; that, after the cancellation because of the above assignment, appellee first ascertained that the Keelers were large stockholders and in active though concealed control of the National Clay Works; that the stock, owned by the Keelers, was held in the name of Potter, the president of the National Clay Works, and such ownership and control were known to him and to the secretary-treasurer thereof at the time the license contract was entered into, but were fraudulently concealed by them from appellee. The petition further alleged that, under the terms of its license contracts, appellee was obligated to protect the rights and title of its licensees thereunder, and that appellant and the National Clay Works were interfering with and threatening such licensees and damaging and endangering their business rights thereunder.

Appellant's answer amounts to a claim that the license agreement is in full force and effect, that the rights thereunder come to it by succession and not transfer, and it counterclaims for damages because of the subsequent license contracts made in the same territory.

After a full trial upon the merits, the court made detailed findings of fact, and thereon concluded and decreed that the license contract in question was void for fraud practiced upon the appellee in its inception; that, after a stated date, it became no more than a nonexclusive license; that it was duly terminated by proper cancellation because of the attempted assignment thereof to the appellant; that the counterclaim was without merit; that the license should be deemed annulled, the counterclaim dismissed with prejudice, and appellant enjoined from claiming any rights thereunder and from interfering in any manner with the operations of other licensees.

Appellant challenges the decree upon the merits, upon the three grounds that the court erred in adjudging the license contract void because of fraud in its inception, in adjudging that after April 30, 1926, the licensee was a nonexclusive licensee, and in adjudging that the license was terminated because of assignment by the National Clay Works to it. Determination of this appeal does not require examination of all of these contentions. If there was fraud by the licensee in the inception of this contract and appellee promptly acted to cancel the contract, upon gaining knowledge of the fraud, that is sufficient to dispose of this appeal. The evidence shows such prompt action by the bringing of this action shortly after discovery of the alleged fraud. The question, therefore, is whether such fraud was shown.

The evidence abundantly supports the findings thereon by the chancellor. Not only does the evidence support, but it overwhelmingly compels the results reached by the trial court. Very briefly summarized, it shows the following: The Keeler interests were engaged extensively in operating brick and tile plants at Mason City, Iowa, including the manufacture and sale of large quantities of building tile used for the same purposes as the tile covered by appellee's patents; that they had secretly bought a large amount of the capital stock of the National Clay Works, such purchase being through and held in the name of Potter, who was president of that company. The negotiations of appellee, resulting in the license contract, were carried on with Potter and with Pearce, who was secretary-treasurer of that company and a son-in-law of Potter. Appellee's representatives made very clear to those two men its requirement that the Keelers should have

620

no interest in the National Clay Works business. It was obvious to them that the main advantage to appellee from the license contract would be the royalties, and that the volume of royalties would depend upon the amount of such tile sold. It was clear to them that appellee would not enter into a contract where a formidable competitor would have an interest in the business of its licensee. Up to and at the time this license contract was executed, Potter and Pearce deliberately and actively concealed the true situation from appellee. In fact, they went further than mere concealment, and falsely assured appellee that the Keelers had no such influence. For more than sixteen months after the contract became effective the licensee made no serious effort to market the products under the license. Its entire output of that character during that time was trivial and would have occupied its plants only two days for production thereof. It is very clear that the Keelers, acting through their tools, Potter and Pearce, had secured this license for the one purpose of preventing competition thereunder with their own products, and that such object was successfully carried out. Ignorant of this connection with the Keelers, but observing the utter lack of any effort to market products under the license contract, appellee, after suffering under this contract for sixteen months, exercised its right to revoke the license and annul the contract in so far as its exclusive feature was concerned. Thereafter, and because of the financial difficulties in which the National Clay Works found itself, the appellant was organized and financed and took over the business of the former concern. To carry out this arrangement, the property of the former was transferred by appropriate instruments to the latter. The transfer of this license contract seems to have been attempted through an assignment. This action was taken without any notice to appellee and when it learned thereof it promptly communicated with both companies declaring annulment of the license contract. It was not until "early in December, 1926" that appellee ascertained that the Keelers were interested in the National Clay Works at the time the license contract was made. This action was filed December 13, 1926.

From the above, it is clear that appellee would be within its rights in canceling the license contract because of fraud in its inducement and that it acted promptly.

The decree should be and is affirmed.