[S. F. No. 18605.   In Bank.   Jan. 29, 1954.]

H. J. HEINZ COMPANY (a Corporation), Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

Chickering & Gregory, William H. Parmelee, Frederick M. Fisk, Paul M. Duff, Moses Lasky, Christy, Parmelee & Strickland, Brobeck, Phleger & Harrison and Herman Phleger for Petitioner.

Morris Lowenthal, Juliet Lowenthal and Karl D. Lyon for Respondents.

CARTER, J.—This is a review of an order made after proceedings in contempt for violation of an injunction issued in an action in which Charles Owens was plaintiff, hereafter referred to as plaintiff, and H. J. Heinz Company, a corporation, petitioner here, was defendant, hereafter referred to as defendant.

In 1943, plaintiff commenced the above-mentioned action for declaratory and injunctive relief against defendant, charging that he was the owner of a patent for a vinegar generator; that a license agreement from plaintiff to defendant to use the patent in making and using the generator was obtained by fraud and lacked consideration. A declaration of the invalidity and unenforceability of the license was asked, together with a declaration that defendant had no right to build or use the patented generators, but threatened to do so, and should be restrained from asserting any claims under the license. On December 21, 1944, the court gave judgment in that action declaring the license invalid and unenforceable; that plaintiff owned the patent and defendant had no right to build or use generators of the character covered by plaintiff's patent. Defendant was enjoined from asserting any right under the license or any right to build or use the gen-

erator covered by the patent other than one at its plant in Berkeley, California. That judgment became and is final.

In September, 1949, plaintiff filed in that action an affidavit stating that the court had issued an injunction wherein it was adjudged and decreed that defendant had no right or license to build or use vinegar generators of the type covered by plaintiff's patent and that the purported license given by plaintiff to defendant was invalid; that the judgment provided (stating the exact words of the injunction) that notwithstanding the injunction plaintiff is "informed" that defendant has built and used the generators covered by plaintiff's patent; that in correspondence with defendant in June of 1949, the latter did not deny that it had built and installed generators but did deny that it violated plaintiff's rights; that when plaintiff was installing a generator at defendant's Berkeley plant the latter's agent took pictures and sketches thereof, and during the installation, one of plaintiff's assembly prints disappeared and plaintiff believes the agent took it; that plaintiff believes defendant has appropriated his patent and is claiming the right to make and use generators covered thereby; that defendant's conduct is in violation of the injunction. Pursuant to the affidavit the court issued an order reciting that it appeared that defendant had been making and using generators in violation of the injunction and directing defendant to show cause why an order should not be made holding it in contempt of court for violating the injunction and why there should not be made such other orders as may be required to "correct" the violations. Defendant filed a return to the order to show cause (later amended) asserting insufficiency of plaintiff's affidavit, the lack of jurisdiction of the court in granting the injunction because it involved patent rights over which the federal courts have exclusive jurisdiction, and denying that it had built or used generators of the type covered by the patent. Defendant moved to vacate the order to show cause and to modify the injunction by striking out the provisions thereof restraining it from building and using generators of the type covered by the patent, asserting that they invaded the jurisdiction of the federal courts.

The court made an "interlocutory order" reciting the foregoing and that it had denied defendant's motions; that the judgment in the action was res judicata of defendant's claims of lack of jurisdiction; that defendant was estopped to assert lack of jurisdiction; and that the sole issue was whether the injunction had been violated. The court made findings on

those matters and also that the issues in the action embraced the right, if any, of defendant to build and use the generators in view of plaintiff's patent, independent of as well as under the license; that the issue of patent infringement was raised by both plaintiff and defendant therein but at no time did defendant question the court's jurisdiction; and that defendant was violating the injunction and infringing plaintiff's patent. It found that defendant was in contempt of court and ordered it to appear for the purpose of determining the penalty to be imposed and relief to be awarded plaintiff for violation of the injunction.

The court made its "Final Order," here reviewed, on March 24, 1952, incorporating its interlocutory order and awarding plaintiff compensatory damages against defendant in the sum of $375,934.66, for past damages suffered by reason of the violation of the injunction and $526 per day for the continuing violation of the injunction until defendant has destroyed the generators; if the damages were not paid, execution might issue against defendant's property and plaintiff might apply for a contempt order. To prevent future violation of the injunction defendant was ordered to destroy 16 specified generators (valued at over $160,000), being operated by it, within 45 days and report to the court. It was also ordered that the proceeding was in civil contempt and the relief granted was remedial and not for punishment for wilful disobedience of the injunction; that jurisdiction was retained to make further orders to carry out its order.

Defendant's main contentions are: That the court had no jurisdiction to grant the injunction in the action nor entertain the contempt proceedings because they involved patent rights within the exclusive jurisdiction of the federal courts and hence it could not properly be held in contempt for violating the injunction; that the court had no authority to award to plaintiff, in the contempt proceedings, compensatory damages resulting from the violation of the injunction.

On the question of jurisdiction to grant the injunction in the action and entertain the contempt proceedings, it should be noted that the Constitution of the United States provides that Congress shall have power "To promote the progress of science and useful arts, by securing for limited times to . . . inventors the exclusive right to their respective . . . discoveries." (U. S. Const., art. I, § 8(8), and pursuant thereto Congress has provided by statute that: "The [federal] district courts shall have original jurisdiction of any civil action aris-

ing under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.'' (28 U.S.C.A., § 1338(a).) Before coming to the question of the jurisdiction of the court to grant injunctive relief in the judgment rendered in the action, other things must be considered.

█ Defendant claims that the action, and ensuing judgment granting plaintiff injunctive relief against defendant, dealt only with conduct by it in claiming and exercising a right under the license agreement to build and use the generators; that the court did not enjoin it from infringing plaintiff's patent independent of the license, but in the contempt proceeding the court construed the injunctive provisions in the judgment as prohibiting infringement as well as claiming rights under the license, and that so interpreted, the court lacked jurisdiction to render the judgment with its injunctive provisions because of the exclusive federal court jurisdiction. It is true that the complaint in the action charges that defendant threatens to exercise rights under the license, which plaintiff asserts is invalid, by building generators of the character covered by the patent, but it is also alleged that defendant threatens to build generators of the character covered by plaintiff's patent and, by so doing, is causing depreciation of the value of plaintiff's patent. In the prayer it is asked that it be declared that defendant has no right to build generators of the type covered by plaintiff's patent and that it be enjoined from claiming any rights under the patent and claiming any right to build generators covered by plaintiff's patent. Fairly interpreted, the complaint demands that the license be set aside and, prevailing on that issue, relief be granted for infringement. Defendant, in its answer, denied it had no right to build generators covered by the patent. In its findings the court stated that plaintiff was the owner of the patent; that the license was void; that a controversy existed between the parties concerning defendant's right to build generators covered by the patent and concerning the effect of the license; that defendant threatens to exercise and claim rights under the license and to build generators covered by the patent, which will cause depreciation in the value of the patent. In its judgment the court declared defendant has no right to build generators covered by the patent and that defendant is restrained ''from asserting or claiming the *right or* license to build or have built for itself or to maintain or operate vinegar generators of the type, kind or character covered by any Letters

Patent [issued to] . . . plaintiff . . ., other than the one vinegar generator installed by plaintiffs at the [defendant's] . . . factory in Berkeley, California.'' (Emphasis added.) Thus it is clear enough that defendant was enjoined not only from exercising any rights under the license but also any right to build generators covered by the patent independent of the license. Moreover, it was determined by the trial court (the same judge who tried the action) in the contempt proceedings that the injunction embraced infringement of the patent. It found in its ''interlocutory order'' in the contempt proceedings heretofore mentioned: ''The allegations and prayer in the complaint [in the action] for declaratory relief and the evidence produced at the trial were not confined to the existence of the alleged license but went beyond said 'license' on plaintiff's contention that the defendant H. J. Heinz Company claimed the right and had been threatening to make generators of the kind covered by Owens' patents, independently of the alleged 'license.' It clearly appears that this action as filed and prosecuted by plaintiffs was not confined solely to the validity of said 'license' but was equally concerned with the threats made by the defendants, both under the license and independent of the 'license, to build and operate vinegar generators of the kind and character covered by the said letters patent owned by Charles H. Owens, everywhere in the world and without paying any consideration therefor. It also appears that one of the issues raised by the plaintiffs' complaint, as well as by defendants' answer thereto, was whether or not this Court would decree and declare that the H. J. Heinz Company had no right of future infringement of the Owens patents and had no right in the future to erect generators, whether under the alleged license or otherwise, of the kind covered by said plaintiff's patents. . . .

''The said answer filed by defendants did raise a question requiring an original interpretation by the Court of the scope and claims of the Letters Patent No. 2,089,412, owned by plaintiff Charles H. Owens, by contending and asserting that the said generator installed at the Berkeley plant was not identical with and similar to, in every respect, the Owens installation at the plant of the Frank Tea & Spice Co., Cincinnati, Ohio, and susceptible of operation in the same manner as the Frank installation was operated. . . . In said answer defendant H. J. Heinz Company asserted the right to build and erect generators of the type covered by the aforesaid patent of plaintiff not only upon the basis of the alleged 'license' of November 25, 1941,

but also upon the basis of an alleged oral agreement claimed to have been made with plaintiffs prior to August 28, 1940. . . . The answer further affirmed that the H. J. Heinz Company claimed the right to build and have built for itself and to operate vinegar generators of the type, kind and character covered by the letters patent owned by Charles H. Owens and the answer admitted that a justiciable controversy existed between Owens and said defendant company on that subject. . . .

"As appears from said judgment and decree and as intended by this Court, based upon and pursuant to the issues raised by plaintiffs' complaint and by defendants' answer and by the evidence, the said decree and injunction of this Court was not confined to the limited question of the existence or validity of the alleged 'license' agreement and any rights of defendant thereunder, but perpetually prohibited the defendant H. J. Heinz Company from either asserting the right to build or from building or erecting or operating such Owens Giant Type Generators, irrespective of whether the defendant company asserted a license from Owens to do so." On several occasions during various proceedings in the trial court defendant in effect conceded that the infringement issue was adjudicated. The United States Court of Appeals passed upon that question of interpretation. After the contempt proceedings were initiated defendant sought declaratory relief in federal district court to enjoin plaintiff from prosecuting those proceedings in the superior court on the ground that the state court had no jurisdiction. Judgment was rendered in the federal district court against defendant and it appealed to the United States Court of Appeals. That court affirmed the judgment (*H. J. Heinz Co.* v. *Owens,* 189 F.2d 505, cert. den. 342 U.S. 905 [72 S.Ct. 294, 96 L.Ed. 677]), reciting the facts as to the injunctive provisions of the judgment as above mentioned and stating that the injunction restrained an infringement on the patent. Defendant had claimed lack of jurisdiction in the state court. The United States Court of Appeals held that the federal courts had no authority, by reason of a federal statute, to enjoin a state court. Defendant moved for a correction of the opinion, asserting that the injunctive provisions of the judgment should not have been interpreted as restraining infringement of the patent. In denying the motion the court of appeals stated, defendant asserts "that this court has misconceived the factual basis and legal holding of a state court adjudication' [the injunction judgment] with reference to the matter in controversy. In one particular,

appellant [defendant here] is correct. Owens did not claim and the state court did not find that Heinz had actually infringed the Owens patent. Rather Owens *claimed* and the *court found* only a threatened *infringement.* However, nothing in our decision turns upon any difference between actual infringement and threatened infringement as a basis of adjudication in the state court. The important thing is the scope of the decree of the state court with reference to future *infringement.* On that point, despite appellant's renewed urging to the contrary, we understand the action of the state court to have been as heretofore stated in our opinion in this case." (Emphasis added; *H. J. Heinz Co.* v. *Owens,* 191 F.2d 257.) To the same effect is an order made by the federal district court denying a petition by defendant, after the contempt proceedings were instituted, to remove the contempt proceedings to the federal court on the ground that the latter and not the state court, had jurisdiction. On motion of plaintiff the proceedings were remanded to the state court.

We conclude, therefore, that the injunction action and judgment did involve threatened infringement of the patent as well as rights under the license and respondent court was correct in so determining in the contempt proceedings.

The question is, therefore, whether a state court has jurisdiction in an equity action to cancel and set aside a license agreement to use a patent, where there is also involved, and the judgment includes, an injunction against threatened infringement of the patent in view of the provisions of article I, section 8(8) of the Constitution of the United States and federal statute, 28 U.S.C.A., section 1338(a), *supra.* In other words, we have a case in which plaintiff, as the owner of a patent, sought to have declared invalid, for fraud and lack of consideration, a license given by him to defendant, and if he was successful in that endeavor, he wanted future protection by injunction against the use of the patent by defendant, that is, infringement. We have concluded that the state court had jurisdiction.

It will be noted that the statute (28 U. S. C. A., § 1338(a), *supra*) states that the federal district court has exclusive jurisdiction of "action[s]" arising under federal patent law. It does not purport to cover all patent right "question[s]" which may arise in some other kind of an "action" or "case" such as one based upon common law or equity; the latter actions manifestly are within the jurisdiction of the state courts. As said: "Section 711 [the predecessor

of 28 U.S.C.A., § 1338(a), *supra*] does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of 'cases' arising under the patent laws.'' (*Pratt* v. *Paris Gaslight & Coke Co.,* 168 U.S. 255, 259 [18 S.Ct. 62, 42 L.Ed. 458].) ▇ Accordingly, it is said that ''. . . where a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, *or asks the aid of the Court in declaring a forfeiture of the license or in restoring an unclouded title to the patent,* he does not give the federal district court jurisdiction of the cause as one arising under the patent laws. *Nor may he confer it in such a case by adding to his bill an averment that after the forfeiture shall be declared, or the title to the patent shall be restored, he fears the defendant will infringe and therefore asks an injunction to prevent it.* That was *Wilson* v. *Sandford.* If in that case the patentee complainant had based his action on his patent right and had sued for infringement, and by anticipation of a defense of the assignment had alleged a forfeiture by his own declaration without seeking aid of the court, jurisdiction [of the federal district court] under the patent laws would have attached, and he would have had to meet the claim by the defendant that forfeiture of the license or assignment and restoration of title could not be had except by a decree of a court, which if sustained, would have defeated his prayer for an injunction on the merits. But when the patentee exercises his choice and bases his action on the contract and seeks remedies thereunder, he may not give the case a double aspect, so to speak, and make it a patent case conditioned on his securing equitable relief as to the contract.'' (Emphasis added; *Luckett* v. *Delpark,* 270 U.S. 496, 510 [46 S.Ct. 397, 70 L.Ed. 703].) (See, also, *Pendleton* v. *Ferguson,* 15 Cal.2d 319 [101 P.2d 81, 688]; *Seagren* v. *Smith,* 63 Cal.App.2d 733 [147 P.2d 682]; *Deakins* v. *Superior Court,* 90 Cal.App. 630 [266 P. 563]; *Wilson* v. *Sandford,* 10 How.(U.S.) 99 [13 L.Ed. 344]; *National Clay Products Co.* v. *Heath Unit Tile Co.,* 40 F.2d 617; 40 Am.Jur., Patents, § 170.) There is no basis for any distinction based on the claim that plaintiff may have repudiated the license before suit. The action still was one to cancel or revoke the written license as it was still outstanding in defendant's hands and for the further relief against threatened patent infringement.

▇ On the question of the propriety of awarding compensatory damages, that is, damages suffered by plaintiff by

reason of defendant's violation of the injunction, petitioner contends that the court had no authority in a contempt action to award such damages. This contention must be sustained.

In this state "the power of the Courts to punish for contempt has been regulated by statute . . ." since 1851 (*Galland* v. *Galland,* 44 Cal. 475, 478 [13 Am.Rep. 167]; *Ex parte Rowe,* 7 Cal. 175, 176, 177). Section 1218 of the Code of Civil Procedure provides that ". . . a fine may be imposed on him [one guilty of contempt] not exceeding five hundred dollars, or he may be imprisoned not exceeding five. days, or both. . . ." Section 1219 authorizes imprisonment as a coercive measure where the contempt consists of a refusal to perform an ordered act. These provisions have been the law since their enactment in 1851 and have been recognized by the courts as establishing the limits within which a court may punish for contempt. (*Ex parte Cohen,* 6 Cal. 318, 319, 321.) In *In re Garner,* 179 Cal. 409 [177 P. 162], it was held that section 1218 was constitutional and that the imposition of a penalty in excess of that prescribed by that section was an act beyond the power of the court and therefore void.

So far as the alleged "inherent" power of the court to award compensatory damages is concerned, section 4 of the Code of Civil Procedure provides that the rule of the common law that statutes in derogation thereof are to be strictly construed has no application "to this code." Several cases have set forth the rule that section 1218 is a "limitation upon the power formerly exercised by the court to punish for contempt" (*Galland* v. *Galland, supra,* 44 Cal. 475, 478; *In re Garner, supra,* 179 Cal. 409; *Ex parte Abbott,* 94 Cal. 333 [29 P. 622]; *Matter of Tyler,* 64 Cal. 434). We are referred to no authority in support of the order of the trial court either in this state, or elsewhere, where contempt proceedings are regulated by statutory provisions similar to ours, and independent research discloses none. On the other hand, Idaho and Montana, whose Codes of Civil Procedure were taken from that of California, have both held that their statutory provisions precluded the courts from imposing compensatory damages for .contempt. (*State ex rel. Flynn* v. *District Court,* 24 Mont. 33 [60 P. 493]; *Levan* v. *Richards,* 4 Idaho 667 [43 P. 574].) Both decisions note that their contempt statutes are the same as in California and rely upon the California cases heretofore cited.

The injured person's property rights may be adequately protected through recourse to the remedies provided by other statutory law. In *In re Morris,* 194 Cal. 63, 69 [227

P. 914], it was held that acts in contempt of court had a triple aspect, and that "It [was] apparent upon reflection that the same act may at the same time take on a third aspect in which it is to be regarded as an offense against private rights, and remediable as such by an ordinary action at law." (See, too, *Kirby* v. *San Francisco Sav. & Loan Soc.*, 95 Cal.App. 757 [273 P. 609].) In 39 California Law Review, at page 560, the author states that "California has no provision for compensatory contempt proceedings. Civil damages may be collected in an ordinary civil action for an act otherwise a contempt."

The enforcement of an order of contempt in this state is not for the vindication of a private right but is for the maintenance of the dignity and authority of the court, and to preserve the peace and dignity of the people of the State of California (*In re Morris, supra,* 194 Cal. 63, 69).      Insofar as the contempt is against the authority of the court, section 1218 of the Code of Civil Procedure is adequate to compel the enforcement of its order since each day's violation is a separate offense.

To allow compensatory damages in the contempt proceeding would have the effect of turning it into an action for damages. In an action for damages, the parties are ordinarily entitled to a trial by jury and an appeal, neither of which has been accorded the petitioner in this proceeding.

Defendant claims that the affidavit initiating the contempt proceeding was insufficient to confer jurisdiction on the trial court. We have heretofore set forth its contents. The code requires that where the contempt is outside the court's presence, the affidavit should set forth the facts constituting the contempt. (Code Civ. Proc., § 1211.)      While the affidavit does state some things in language to the effect that affiant is so informed and believes, it is squarely stated in the last sentence that the conduct of defendant was a violation of the injunction. Sufficient facts were set forth, namely, that defendant had built and used generators covered by plaintiff's patent contrary to the terms of the injunction.      Facts peculiarly within the knowledge of the one charged with violating the injunction may be on information and belief. (*Ballentine* v. *Superior Court,* 26 Cal.2d 254 [158 P.2d 14].) Certainly it was peculiarly within defendant's knowledge as to what extent it was building and using generators covered by plaintiff's patent.

Defendant makes other contentions such as that it was denied due process of law because the court would not pass upon the

validity of plaintiff's patent in the contempt proceedings. The trial court found that issue was not relevant in those proceedings and that defendant had the opportunity to raise that issue in the action in which the injunction was obtained, and not having done so, it was res judicata.

Ordering the destruction of the generators would seem supportable as a method of preventing defendant from further violating the injunction. It would seem that if a person may be deprived of his liberty until he complies with a valid judgment or order of a court, he may be required to destroy that which he created in violation of such judgment or order. In *Morton* v. *Superior Court,* 65 Cal. 496 [4 P. 489], a dam was ordered removed by court order and it was also ordered that the corporation, its officers, agents and employees and all persons acting under it be enjoined and restrained from continuing or maintaining the same. After its removal, pursuant to court order, one whom the court found to be an agent of the corporation reconstructed the dam. The agent who reconstructed the dam was ordered imprisoned until the dam was again removed from the property. It has been recently held that a court may order the destruction of a building constructed in violation of a provision in the grant of a right of way for a power line by a predecessor in interest of the owner of the servient tenement of which the latter had no knowledge. (*Pacific Gas & Elec. Co.* v. *Minnette,* 115 Cal. App.2d 698 [252 P.2d 642].) It would seem to follow that if such harsh consequences could flow from the unintentional violation of a provision in a deed, similar consequences flowing from the intentional violation of a court decree cannot be successfully challenged.

That portion of the order awarding compensatory damages to the plaintiff is annulled; that portion of the order directing the destruction of 16 specified vinegar generators is affirmed.

Gibson, C. J., and Traynor, J., concurred.

SCHAUER, J., Concurring.—Although the "Final Order" in the contempt proceedings recites in Paragraph IX that the "object and purpose of the relief prayed for by the plaintiff and granted by this order are remedial and for the benefit of the plaintiff and not for the purpose or by way of punishment of defendant for its wilful and knowing disobedience and violation of the . . . decree and injunction . . .," nevertheless, in Paragraphs V and VI of its order wherein the court

specifically directs that the generators in question be destroyed and prohibits further construction, maintenance and use of certain other generators then in the course of construction, the court expressly declares and reiterates that those particular portions of the order (set forth in Paragraphs V and VI) were made "To correct and prevent further and future violations of the injunction and decree. . . ." It is thus apparent that the provisions of Paragraph IX have particular reference to the compensatory monetary relief awarded Mr. Owens and do not preclude sustaining the directions contained in Paragraphs V and VI on other grounds.

The same thought was expressed by the court in its written memorandum opinion which preceded by three days the "Final Order," and in which after determining the damages to be awarded to plaintiff the court continues: "The second important issue before the Court for determination is the nature of the *corrective* remedial relief to be granted. . . . The award of damages . . . will fairly and duly compensate plaintiff for the wrongful use and operation by defendant of his patented generators and for the unjust enrichment of the defendant. . . . Such an award, however, would not and should not allow defendant to secure the very benefits of the fraudulent 'license' which this Court cancelled in 1944 by the decree and injunction. The continuing use by the defendant of the Owens type generators is without authorization of this Court or of plaintiff and is a *continuing violation* of the decree and injunction. Under such circumstances there is an inherent power of a Court of equity, in a civil contempt proceeding such as this, to grant the necessary corrective remedial relief to *compel compliance with the injunction* and decree. This can be accomplished only by the destruction and demolition of the generators that have been constructed in violation of the decree and by stopping all new construction. . . ." (Italics added.)

In the memorandum opinion the court also commented that "At the outset, it must be noted that the controversy is not simply one involving patent infringement, but concerns the *violation and disobedience of a final court injunction*. . . ." (Italics added.)

And in the court's Interlocutory Order, which is expressly made a part of the Final Order in the contempt proceedings, it is noted that "This proceeding is one to enforce the injunction and decree issued in the original trial of this action. . . ."

Since in a sense it is true that any contempt proceeding seeking to enforce the terms of an injunction theretofore issued in favor of a private plaintiff is for plaintiff's benefit, it appears to me that the court's express recognition of that fact should not deprive it of the power which it was here exercising, of compelling compliance with the injunction, and to that end ordering destruction of generators which defendant had constructed and was using in direct, deliberate and flagrant disregard of the injunction. The court repeatedly declared that the purpose of ordering the destruction was to enforce the earlier injunction. I believe it had power to do so and this view is supported by *Morton* v. *Superior Court* (1884), 65 Cal. 496 [4 P. 489].

For the reasons above stated I concur in the judgment and, generally, in the reasoning of Mr. Justice Carter.

SHENK, J., Concurring and Dissenting.—I concur in the decision of the court insofar as it holds that the trial court had jurisdiction to grant the injunction and to entertain the contempt proceedings. I am also in agreement with the holding that the power of the court to punish for contempt is legally limited by the provisions of section 1218 of the Code of Civil Procedure to a fine of "not exceeding five hundred dollars," or to imprisonment "not exceeding five days," or both such fine and imprisonment. Therefore when the trial court assumed to fine the defendant $375,934.66 for offenses based on daily violations in the past and $526 per day for continuing daily violations, and then proceeded to direct these sums to be paid as compensatory damages in favor of the plaintiff, an excess of exercisable power is obvious.

Likewise the order based on the present record for the destruction of the generators valued at $160,000 was beyond the jurisdiction of the court and should be annulled. Paragraph IX of the order under review provides that "the object and purpose of the relief prayed for by the plaintiff and granted by this order are remedial and for the benefit of the plaintiff and not for the purpose or by way of punishment of defendant for its wilful and knowing disobedience and violation of" the injunction. There was nothing in the injunctive order requiring the destruction of the generators. If the decree had ordered them destroyed a situation would have been presented similar to that involved in *Morton* v. *Superior Court,* 65 Cal. 496 [4 P. 489], relied on by the majority. In that case there was a mandatory injunction ordering the dam removed. It

was removed but was replaced by an agent of the party enjoined. There could be no question of the power of the court to punish the agent for contempt and order the reconstructed dam removed. That is not this case. Here there is no order for destruction in the judgment of injunction and the declared purpose of the order of contempt is for the benefit of the plaintiff. In *Ex Parte Gould* (1893), 99 Cal. 360 [33 P. 1112, 37 Am.St.Rep. 57, 21 L.R.A. 751], this court said, at page 362, quoting with approval from *William's Case*, 26 Pa.St. 19 [67 Am.Dec. 374], that the purpose of a contempt proceeding ''is not to indemnify the plaintiff for any damage he may have sustained by reason of such misconduct, but to vindicate the dignity and authority of the court. It is a special proceeding, criminal in character, in which the state is the real plaintiff or prosecutor.'' In recognition of this rule the majority opinion here correctly states: ''The enforcement of an order of contempt in this state is not for the vindication of a private right but is for the maintenance of the dignity and authority of the court. . . .'' Nowithstanding that uniformly supported principle an order in this contempt proceeding for the destruction of property for the benefit of the plaintiff is affirmed. Such an order is not necessary to vindicate the power of the court. This could be accomplished by proceedings against the defendant for contempt under the authority and within the limitations of section 1218 of the Code of Civil Procedure for daily violations of the order of injunction. I would annul the order in its entirety.

Edmonds, J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied February 24, 1954. Shenk, J., Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.