[No. E007652. Fourth Dist., Div. Two. Oct. 25, 1991.]

DUDLEY BREWSTER et al., Plaintiffs, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant and
Respondent;
JAMES H. DAVIS, Appellant.

COUNSEL

James H. Davis, in pro. per., James A. Quinn and William H. Waysman for Plaintiffs and for Appellant.

Brobeck, Phleger & Harrison, George H. Link, William K. Swank, MacLachlan, Burford & Arias, Joseph Arias, John J. Corrigan and Douglas E. Stephenson for Defendant and Respondent.

## OPINION

RAMIREZ, P. J.—Appellant James H. Davis, attorney for plaintiffs, appeals from the trial court's imposition of sanctions against him in the amount of $184,867.08 which sum included reimbursement to respondent Southern Pacific Transportation Company for expenses of closing one line of its railroad operations.

We have determined that the expense of closing railroad operations was not the proper subject of a sanctions order and we reverse as to that amount. We have further determined that the trial court's award of attorney fees for bringing the sanctions motion must be reversed with directions to the trial court to recalculate the award as discussed below. As to all other sanctions imposed, we affirm.

### FACTS

On May 12, 1989, a heavily loaded train operated by Southern Pacific Transportation Company (Southern Pacific) derailed in the Duffy Street neighborhood of San Bernardino. Less than two weeks later, on May 25, 1989, an underground Calnev pipeline carrying jet fuel ruptured and exploded in the same neighborhood causing substantial fire damage.

Appellant Davis is an attorney who had been retained by several residents in the afflicted neighborhood to represent them in actions arising out of the derailment and the subsequent explosion. On the afternoon of May 25, 1989, following the explosion, Davis filed an ex parte application for a temporary restraining order (TRO) against Southern Pacific, Calnev Pipe Line Company, and the City of San Bernardino seeking to restrain those entities from operating the railroad and the pipeline pending a hearing on a preliminary injunction. Davis also sought an order directing Southern Pacific to remove large quantities of sodium carbonate (trona) which had spilled from the train during the derailment and was being stored in piles on the ground in the Duffy Street area.

At the time of the application Davis had not filed any complaint on behalf of the plaintiffs. No notice of the application for a TRO was given to defendants. In a declaration attached to the motion Davis stated that under

Code of Civil Procedure section 527 no notice of the ex parte application was required because of the grave danger presented to the plaintiffs by the continued operation of the railroad and the pipeline.

After a brief hearing on May 25, Judge A. Rex Victor of the San Bernardino Superior Court denied the TRO and scheduled for June 14 a hearing on the order to show cause for a preliminary injunction. Using the proposed order which had been submitted by Davis, Judge Victor struck those portions which related to the TRO, inserted the date and time of the scheduled hearing on the order to show cause, and signed the order.

The following day, May 26, was the Friday before the Memorial Day holiday weekend. At approximately 5:30 p.m. on May 26, Davis handed Craig Whitney, an attorney representing Southern Pacific, a document which purported to be a conformed copy of the order signed by Judge Victor the previous day. On that copy, however, the provisions relating to the TRO had not been stricken, nor had the date of the hearing on the order to show cause been inserted. Judge Victor's name was stamped on the signature line. On the basis of that order Southern Pacific determined that it was restrained from operating trains on the affected line.

On Sunday, May 28, Whitney filed an ex parte application for a hearing to dissolve the TRO. The hearing before Judge Victor was scheduled for 9 o'clock Sunday night at the home of a local attorney. In a declaration attached to the application, Whitney stated that at the time Davis had handed him the order on May 26, "Mr. Davis stated in effect that he was serving a temporary restraining order which he had obtained the previous day." Whitney declared further that when he had spoken to Davis on Saturday, May 27, regarding the TRO, Davis had not told him that no TRO had been issued.

In another declaration in support of the application to dissolve the TRO a representative of Southern Pacific outlined the difficulties to the company of not being able to use the line running near Duffy Street (the Colton line) and stated that Southern Pacific would suffer financial loss of $15,000-$20,000 per day if not allowed to use the Colton line.

The general claim manager for Southern Pacific submitted a declaration in which he stated that his staff had had many contacts with Davis on May 25 and 26; that he had been constantly available to Davis on those days; and that he and Davis were both living in the same hotel in San Bernardino. Nevertheless, Davis had made no attempt to notify anyone from Southern Pacific of the application for a TRO. Moreover, Davis had met with the claim manager and Craig Whitney at 4 o'clock on Friday, but it was not until

5:30, after the courts had closed, that Davis had given them the order he had obtained on the previous day.

A copy of the purported TRO had apparently also been handed to the attorney for the Calnev pipeline following the meeting on Friday, May 26. When that attorney was given notice of the Sunday night hearing, however, he responded that Calnev Pipe Line Company had not been properly served with plaintiffs' papers and therefore did not believe it necessary to attend the hearing.

At the end of a brief hearing on Sunday night Judge Victor signed an order stating that no TRO had been issued on May 25.

An ex parte application for a TRO filed by Davis in federal court was denied on June 9, 1989. By stipulation the parties subsequently agreed to limit the issues at the hearing on the order to show cause to the question of removal of the trona from the Duffy Street area. Following a hearing finally held on July 6, 1989, plaintiffs' request for an injunction was denied. Plaintiffs' complaint, which had eventually been filed June 22, was dismissed at plaintiffs' request on August 21 following progress in the cleanup operations.

On October 17, 1989, Southern Pacific filed a motion requesting the award of reasonable expenses, including attorney fees, in the amount of $182,461.86 to be paid by Davis. The motion was based on Davis's failure to notify defendant of the ex parte application for a TRO which had ultimately resulted in the improper closure of defendant's rail line, and on violations by Davis of Code of Civil Procedure section 128.5 entitling Southern Pacific to recover its attorney fees and reasonable expenses. The attached memorandum of points and authorities contained a litany of the actions taken by Davis which Southern Pacific claimed warranted the imposition of sanctions, and included an itemized statement of the attorney fees incurred by Southern Pacific in responding to those actions.

Also attached to the motion was a declaration by Robert Gregory, a transportation consultant, who provided an itemized statement of the expenses incurred by Southern Pacific as a result of the rerouting of trains necessitated by the closing of the Colton line from May 26 to May 29, 1989. Those expenses, consisting primarily of the cost of the extra trains and extra crews used on the rerouted trains, totalled $139,103.90.

In his response to the motion for sanctions Davis claimed that his failure to give notice of the application for a TRO was justified by the urgency of the circumstances; that he had believed that the copy of the order handed to

Whitney had been properly conformed, and that he never intended to mislead the defendants; and that the railroad had closed its line because of damage to the tracks caused by the derailment and the explosion and not because of Judge Victor's order. Davis, in turn, requested sanctions against Southern Pacific for having to defend against a frivolous motion for sanctions.

In an attached declaration Davis stated his belief that the railroad could not resume operations until it had conducted "compaction tests," and that those tests had not been completed until after the Memorial Day weekend.

The reply by Southern Pacific responded to Davis's claims and included a declaration by Robert Gregory, the transportation consultant, stating that operations on the Colton line had resumed on May 29, the day after Judge Victor issued his second order. Also attached was a declaration by an attorney for Southern Pacific stating that the Colton line was operational during the period in question, and that Southern Pacific would have used the line had it not been for the TRO.

At a hearing on October 31, 1989, Judge Kayashima of the San Bernardino Superior Court heard testimony from Davis on the sequence of events surrounding Davis's transmittal to Whitney of the copy of Judge Victor's order. The court issued a tentative ruling awarding $22,047.93 to Southern Pacific as expenses for lifting the TRO and then stated, "I think they're entitled also to a hundred thirty-nine thousand plus." The court denied the requested attorney fees for the interim hearings, but tentatively awarded attorney fees for bringing the sanctions motion.

In a subsequent declaration counsel for Southern Pacific stated that the total cost of bringing the sanctions motion was $33,228.50, and the portion of that cost which was attributable to those issues on which Southern Pacific had prevailed was $23,715.25.

Following an additional hearing on November 28 at which further argument was presented, Judge Kayashima signed the order awarding sanctions. The court made specific findings with regard to the actions taken by Davis and concluded that "Southern Pacific is therefore entitled to its reasonable attorneys fees [in the amount of $22,047.93] to lift the temporary restraining order and to be reimbursed for its expense in closing its railroad operations for Davis' violation of CCP § 128.5 in the amount of $139,103.90." The court also awarded Southern Pacific attorney fees and expenses of bringing the motion for sanctions in the amount of $23,715.25, for a total award of $184,867.08. The court directed that the judgment be stayed to permit Davis to appeal to this court.

Davis subsequently filed a motion for a new trial, which was denied, and he now appeals.

## DISCUSSION

### I. Award of $139,103.90 as Sanctions

■ The central issue in this appeal is whether the trial court had the authority under Code of Civil Procedure section 128.5 (hereinafter section 128.5) to impose sanctions in the amount of $139,103.90, representing the cost to Southern Pacific of closing down operations on the Colton line between May 26 and May 29, 1989. We have concluded that the court did not have that authority.

Section 128.5 was enacted in 1981 as a legislative response to the decision in *Bauguess v. Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942] in which the California Supreme Court held that a trial court did not have the inherent authority to impose attorney fees as sanctions in the absence of statutory authority. In *Bauguess* the trial court had imposed $700 in attorney fees as sanctions against plaintiff's attorney whose actions had resulted in a mistrial. The Supreme Court reversed the award, noting that "If this court were to hold that trial courts have the inherent power to impose sanctions in the form of attorney's fees for alleged misconduct, trial courts would be given a power without procedural limits and potentially subject to abuse." (*Id.*, at p. 638.)

The stated purpose for the enactment of section 128.5 was "to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in Baugess [*sic*] v. Paine (1978), 22 Cal.3d 626." (Stats. 1981, ch. 762, § 2, p. 2968.) Under the statute, a court may order a party or the party's attorney to pay "any reasonable expenses, including attorney's fees, incurred by another party as a result of bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 128.5, subd. (a).)

This court must determine whether "reasonable expenses" can be interpreted to include expenses which were a consequence of the actions for which sanctions were imposed but which were unrelated to the cost of the actual proceedings before the court. We have determined that under the facts presented here, section 128.5 cannot be read to authorize the award of what amounts to consequential damages.

■ As we have discussed above, the particular problem which section 128.5 was intended to address was the inability of the trial court to award

attorney fees as sanctions in those cases in which the fees had been incurred as a result of the bad faith actions or tactics of the one to be sanctioned. The purpose of the section was to broaden the authority of the courts to manage their calendars expeditiously; the section was not intended as a substitute for substantive causes of action arising out of the underlying facts.[1]

The effect of the trial court's award in the present case was to relieve Southern Pacific of the obligation to file a civil suit for damages against Davis to recover the cost of rerouting their trains. In such a suit Davis would have been entitled to have a jury determine the issues of causation and the amount of damages suffered, both issues which were contested by Davis. To construe section 128.5 to permit such an award would be to broaden that section beyond anything that appears in its history or its text.

An award of sanctions of this nature would also permit an award under section 128.5 which far exceeds the authority of the court to punish the same behavior as contempt. Code of Civil Procedure section 1209, subdivision (a)4, defines contempt of the authority of the court to include "falsely pretending to act under authority of an order or process of the court." The monetary punishment for contempt, however, is limited to $1,000 (see Code Civ. Proc., § 1218); furthermore, a court has no authority to award compensatory damages in a contempt action. (*H. J. Heinz Co.* v. *Superior Court* (1954) 42 Cal.2d 164, 174 [266 P.2d 5].)

The cases cited do not support the expansive reading of the term "reasonable expenses" advanced by Southern Pacific. In *580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1 [272 Cal.Rptr. 227], the court awarded compensation for time spent by personnel of plaintiff in defending against a cross-complaint. Thus, although the court did reject a narrow interpretation of the term "expenses" under section 128.5 which would have limited recovery to actual court costs and attorney fees, the expenses for which recovery was allowed were directly related to and in furtherance of the litigation. (*Id.*, at pp. 27-28.)

In *Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418 [240 Cal.Rptr. 297], the court affirmed an award of $75,258 for "attorney's fees and expenses," with no indication in the record that the award was for anything other than legal fees and costs; a detailed request for $151,000 in fees and costs had been submitted. (*Id.*, at pp. 1436-1437.) Similarly, the court in *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1 [244 Cal.Rptr.

[1]See section 128.5, subdivision (d) (1989 text): "The liability imposed by this section is in addition to any other liability imposed by law for acts or omissions within the purview of this section."

581] upheld a $2,500 award under section 128.5 against plaintiff following plaintiff's unsuccessful attempt to block a municipal election; nothing in the record suggests that the sanctions were for something other than attorney fees and costs. (199 Cal.App.3d at p. 15, fn. 7.)

We have found no legal authority which would support the award of sanctions made by the trial court in this case. Neither have we identified any policy considerations which would compel us to affirm such an award. For the reasons discussed we conclude that the trial court exceeded its authority when it awarded sanctions to Southern Pacific in the amount of $139,103.90 as reimbursement for its expenses in closing the railroad operations. Accordingly, we reverse that award of sanctions.

II. *Substantial Evidence Supported the Award of Attorney Fees as Sanctions*

Davis next argues that the evidence, which was largely circumstantial, was insufficient to support the trial court's award of sanctions.

In its judgment the court made specific findings that Davis failed to notify Southern Pacific of an ex parte application for a TRO, that Davis submitted a false declaration in support of the ex parte application, and that Davis's attempt to obtain the TRO was totally and completely without merit. The court made the further finding that Davis intentionally served Southern Pacific with a void TRO which on its face purported to close Southern Pacific's Colton rail lines.

The court concluded that under section 128.5 "Southern Pacific is therefore entitled to its reasonable attorneys fees to lift the temporary restraining order" in the amount of $22,047.93.[2]

"Under the appropriate standard of review of an order awarding sanctions under section 128.5, it is not the province of this court 'to consider the record on appeal to determine if appellant's conduct meets the standards of frivolousness. . . . [¶] . . . Where the issue on appeal is whether the trial court has abused its discretion, the showing necessary to reverse the trial court is insufficient if it presents facts which merely afford an opportunity for a different opinion . . . .' " (*580 Folsom Associates* v. *Prometheus Development Co., supra,* 223 Cal.App.3d at pp. 19-20.)

---

[2]The award of attorney fees to set aside the void TRO was in fact made in the first instance under California Rules of Court, rule 227. However, since the argument on appeal is couched primarily in terms of an award under section 128.5, we will limit our discussion to the propriety of the award under that section.

"In accordance with the usual rule on appeal, the judgment or order of the trial court is presumed correct. All intendments and presumptions are indulged to support it on matters to which the record is silent, and error must be affirmatively shown. [Citation.] Where the evidence is in conflict, the appellate court will not disturb the findings of the trial court." (*Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 2 [192 Cal.Rptr. 57].)

An award of sanctions under section 128.5 requires a finding of "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." "Frivolous" is defined in the section to mean "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).)

■ The section includes both a subjective and an objective element which must be satisfied before sanctions may be imposed. "[B]y the very language of the statute, it applies, not to all actions or tactics that are frivolous, but only to bad faith actions or tactics that are frivolous." (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1071 [275 Cal.Rptr. 594].) However, as the California Supreme Court noted in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179], "The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay."

In its judgment here the court stated that: "Davis' attempt to obtain the Temporary Restraining Order without notice to Southern Pacific was totally and completely without merit, because no complaint had been filed and no exigent circumstances were present to mitigate this failure to give notice. Davis then proceeded to intentionally and improperly serve[] a void Temporary Restraining Order on Southern Pacific. As a factual matter, no reasonable attorney could have confused Judge Victor's valid order with the void order served on Southern Pacific by Davis."

The court made the further findings that "Davis' attempt to obtain the TRO without notice and without a complaint on file, and Davis' intentional service of the void Temporary Restraining Order were done with subjective bad faith, motivated by improper purposes, including, *inter alia*, an intention to harass Southern Pacific."

The court found both a subjective and an objective element present as to each of the wrongful acts with which Davis was charged. (*Summers* v. *City of Cathedral City, supra,* 225 Cal.App.3d at p. 1071.) Our task here is to determine whether there was substantial evidence to support the trial court's findings.

### A. Failure to Notify Southern Pacific of the Application for a TRO

■ The court first found that Davis had failed to notify Southern Pacific of the ex parte application for a TRO, and that he had submitted a false declaration in support of the application. It is undisputed that Southern Pacific was not actually notified of the application, and the record does not reveal that Davis made any attempt to notify them. In his application Davis stated that under Code of Civil Procedure section 527, no notice of the ex parte application was required.[3]

The trial court implicitly determined that as a matter of law the reasons specified by Davis in his application for a TRO were not sufficient to warrant an exception to the notice requirement. We cannot say the trial court erred in making that determination. There is nothing in Davis's application which supports his assertion that "great and irreparable injury has resulted and will continue to present grave danger to these applicants before this matter can be heard on [] noticed motion." Davis did not specify what the "grave danger" consisted of, and such danger was not apparent from the circumstances which existed at the time of the application.

Davis's failure to give notice to Southern Pacific in the absence of adequate grounds for the lack of notice rendered the application totally and completely without merit. Further, Davis's allegation that notice was not required is sufficient to provide evidentiary support for the trial court's finding that Davis was acting in bad faith since the facts did not support Davis's assertion and the circumstances were such that notice could easily and appropriately have been given. Accordingly, we affirm the trial court's finding on that issue.

### B. Service of the Void TRO on Southern Pacific

■ The trial court next found that Davis "intentionally and improperly served a void Temporary Restraining Order on Southern Pacific." The court also found that as a factual matter "no reasonable attorney could have confused Judge Victor's valid order with the void order served on Southern Pacific by Davis."

It is undisputed that the TRO was void, so the only question before us is whether there was evidence to support the court's finding that Davis acted "intentionally and improperly." We conclude that there was.

---

[3]Section 527 states, in relevant part, that no temporary restraining order shall be granted without notice to the opposite party "unless it shall appear from facts shown by affidavit or by the verified complaint that great or irreparable injury would result to the applicant before the matter can be heard on notice . . . ."

The court found that no reasonable attorney could have confused the valid and the void orders. Clearly, however, the court did not mean that any attorney seeing a copy of the order for the first time would have known it was not a properly conformed copy. The only plausible reading of the court's finding is that a reasonable attorney who was in Davis's position could not have confused the two orders. With that we agree.

Davis was an experienced attorney; he had drafted the proposed order; he had seen the changes made by Judge Victor to the original order; he had taken the copies to be conformed by the clerk; and he knew that a hearing had been scheduled and should have been noted on the conformed copies. He was the one person in a position to know whether the copies had in fact been conformed. We conclude that there was evidence to support the court's finding that a reasonable attorney in Davis's position could not have confused the two orders.

We also must consider Davis's failure to serve the order on Southern Pacific for a full day after he had received it, his decision to serve the order late on a Friday afternoon, and his failure to communicate to Southern Pacific's attorney the fact that the order did not constitute a TRO. That evidence combined with Davis's failure to give notice of the application for a TRO to counsel for Southern Pacific under circumstances in which their presence at the hearing would have avoided all subsequent confusion leads us to conclude that the evidence supports the trial court's finding that Davis's acts were intentional.

Davis claims that the evidence presented was circumstantial and was insufficient to support the award of sanctions. We reject this contention. "[W]ilfulness or intent may be proved by direct or by circumstantial evidence. [Citations.]" (*Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 792 [51 Cal.Rptr. 825, 415 P.2d 521].) Moreover, "circumstantial evidence in civil cases, in order to be sufficient to sustain the verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the [finder of fact]. [Citations.]" (*Spolter* v. *Four-Wheel Brake Serv. Co.* (1950) 99 Cal.App.2d 690, 694 [222 P.2d 307], internal quotation marks omitted.)

We hold that the evidence was sufficient to support the award of sanctions against Davis.

III. *Evidence to Support the Amount of Attorney Fees Awarded as Sanctions*

Davis contends that the amount of attorney fees awarded to Southern Pacific—$22,047.93 to set aside the void TRO and $23,715.25 to bring

the motion for sanctions—was patently unreasonable and should be reversed.

Southern Pacific submitted ample documentation to the court to substantiate its claim of $22,047.93 in attorney fees to set aside the void TRO. Davis claims that the award was excessive, but has not met his burden of showing specific error. We find that the record before us supports that award of attorney fees.

As to the latter award of $23,715.25 for attorney fees spent in bringing the motion for sanctions, a portion of that expense was attributable to documenting the cost to Southern Pacific of closing operations on the Colton line. We have reversed the award to Southern Pacific of those costs, and we must therefore reverse the award of attorney fees expended in calculating those costs.

Accordingly, we reverse the award of $23,715.25 for attorney fees spent in bringing the motion for sanctions. We direct the trial court to award only those attorney fees which can be attributed to time spent preparing the portions of the sanctions motion in which Southern Pacific prevailed.[4]

IV. *Adequacy of Notice*

■ Davis challenges the adequacy of the notice of the intent to award sanctions for the cost of bringing the motion for sanctions. Section 128.5 states that sanctions may be awarded on "the court's own motion, after notice and opportunity to be heard." (Code. Civ. Proc., § 128.5, subd. (c).) At the hearing on October 31, 1989, Judge Kayashima stated his intent to award the costs of bringing the sanctions motion. On November 21, 1989, Southern Pacific submitted its statement of expenses. Davis was given the opportunity at the hearing on November 28 to challenge the adequacy of the notice and to present any substantive objections to the award. Accordingly, we hold that the notice of the intent to award those sanctions was adequate under section 128.5.

---

[4]Davis has not discussed, either in the trial court or on appeal, the issue of whether the trial court had the authority under section 128.5 to award as sanctions the cost of bringing the sanctions motion. Since the issue has not been raised we do not decide in this appeal whether appellant could successfully have challenged the award of attorney fees for bringing the motion for sanctions.

## V. *Order Awarding Sanctions Is Sufficiently Specific to Meet Due Process Requirements*

 Davis's final claim is that the order imposing sanctions does not provide a sufficiently detailed statement of the conduct and circumstances justifying the order as required by section 128.5, subdivision (c).[5]

A review of the judgment signed by Judge Kayashima establishes that this claim is without merit. The judgment contains specific statements of the actions and the state of mind of Davis which were found to warrant the imposition of sanctions. Again, Davis has failed to show a basis for a finding of error.

### DISPOSITION

The award of sanctions in the amount of $139,103.90 for the expenses to Southern Pacific of closing its Colton line between May 25 and May 29, 1989, is reversed. The award to Southern Pacific of attorney fees and costs for setting aside the void TRO, in the amount of $22,047.93, is affirmed. The award to Southern Pacific of attorney fees and costs for bringing the sanctions motion, in the amount of $23,715.25, is reversed with directions to the trial court to recalculate the award in accordance with this opinion.

Each party to bear own costs on appeal.

Hollenhorst, J., and McKinster, J., concurred.

A petition for a rehearing was denied November 19, 1991, and appellant's petition for review by the Supreme Court was denied January 15, 1992.

---

[5]Section 128.5, subdivision (c), provides, in relevant part, as follows: "An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."