[No. A054728. First Dist., Div. Four. July 2, 1992.]

TENDERLOIN HOUSING CLINIC, INC., Plaintiff and Appellant, v. ADAM SPARKS et al., Defendants and Respondents.

**COUNSEL**

Timothy J. Lee and Randall M. Shaw for Plaintiff and Appellant.

Michelle Goldberg, Deputy City Attorney, and Violet Elizabeth Grayson for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—This is an appeal from the trial court's order imposing sanctions pursuant to Code of Civil Procedure[1] section 128.5.

## I. BACKGROUND FACTS

The parties to this appeal are plaintiff and cross-defendant Tenderloin Housing Clinic, Inc. (appellant), and defendants and cross-complainants Adam Sparks and Pacific Bay Inn, Inc. (respondents). In July 1990 appellant

---

[1]All further statutory references are to the Code of Civil Procedure.

filed a complaint alleging that respondents operated a tourist hotel at Pacific Bay Inn in violation of city laws. The case was consolidated with a prior action filed by the City of San Francisco alleging the same charge. In the city's action, the trial court issued a preliminary injunction restricting the tourist use at the hotel and finding respondents guilty of contempt on numerous counts. In January 1991 we affirmed the preliminary injunction in the city's case and sustained six counts of contempt for respondents' violation of the injunction (*CCSF* v. *Sparks* (Jan. 22, 1991) A041905 & A045150 [nonpub. opn.]).

The facts introduced on the present appeal indicate that although trial in the consolidated actions was set for August 12, 1991, and the discovery cutoff date was July 12, 1991, appellant persistently exercised its right to discovery in a frivolous and oppressive fashion with an obvious intent to harass and inconvenience respondents and their trial counsel. Thus, the record reveals that Violet Grayson (Grayson), respondents' attorney, was a sole practitioner and the only lawyer with sufficient knowledge of respondents' case. On April 18, 1991, Grayson advised Timothy Lee (Lee), appellant's trial counsel, that she would be away from San Francisco for two and one-half weeks, i.e., from April 30, 1991, through May 19, 1991, first at an arbitration proceeding in New York, then on a long-planned vacation in England. Shortly after the April 18 telephone conversation, Lee set three discovery motions for hearing on May 8, 1991, the time he knew Grayson would be away. Grayson was forced to move the court and obtain a continuance until May 30, 1991. On May 9, 1991, Lee served two clients of Grayson's (i.e., Tom Muniz, the manager of Pacific Bay Inn, and Sparks) with trial subpoenas requiring them to appear as witnesses in an unrelated third party action (Tenderloin Housing Clinic v. Michael Tsang) on May 13, 1991. Grayson had to obtain a telephone hearing from London to quash the subpoenas and protect her clients' interests. Appellant never explained why it waited until Grayson was in London to serve subpoenas in a case which, in the end, was dismissed by appellant. Several days after Grayson's departure, appellant set three depositions for Thursday, May 16 and Friday, May 17, 1991, i.e., days Lee knew to be the last two weekdays of Grayson's vacation. When Lee refused to continue the depositions until Monday, May 20, 1991, a contract attorney substituting for Grayson moved the court for continuance. Commissioner Gargano denied the motion on technical (procedural) grounds. Thereupon, Grayson called Lee from England begging him to agree to the continuance—at the very least—of the deposition of Tom Gouzoules, whom she considered the most crucial of the three witnesses. Lee refused. Immediately thereafter, Grayson arranged a transatlantic conference call with Lee and Commissioner Gargano at which she repeated that the deposition of Gouzoules required her personal attendance because he was a key

hostile witness (a former marketing director of Pacific Bay Inn who, after the termination of his employment, threatened Sparks with blackmail) whose cross-examination was critical in the case.

When Commissioner Gargano refused to continue the Gouzoules deposition, Grayson had no choice other than to return to San Francisco without delay to safeguard her clients' interest. She left England on May 15, 1991, four days before her scheduled departure. As a result of her abrupt departure, Grayson incurred extra expense in purchasing a one-way ticket from London to San Francisco, and she lost four days of prepaid vacation.

Upon arrival in San Francisco, Grayson was informed by appellant that the Gouzoules deposition was cancelled. She also learned that appellant, contrary to a previous written stipulation, had reset its demurrer from May 31 to May 24, which required the filing of the opposition papers at a time when Grayson was still supposed to be in England; but for her early return, respondents would have defaulted in opposing the demurrer.

Based upon such conduct, respondents moved the court to impose sanctions upon appellant pursuant to section 128.5. They sought compensation in the total of $4,347.50 consisting of the following items: $860 for the one-way ticket from London to San Francisco; $300 for transatlantic telephone charges; $1,000 for nonrefundable prepaid vacation expenses; $1,437.50 for payments made to the contract attorney who dealt with depositions, subpoenas, ex parte motions, etc., in Grayson's absence; and $750 for the transatlantic telephone calls and the time spent by Grayson to fend off appellant's legal maneuverings.

After a hearing the trial court found that appellant acted in bad faith and solely for the purpose of harassing respondents, but reduced the award of sanctions to $1,860, which included the airfare from England to San Francisco and the reimbursement for the cost of four days of missed vacation. Appellant filed a motion for reconsideration which was denied by the trial court. The present appeal followed.

## II. Discussion

Appellant argues that the award of sanctions is not supported by sufficient evidence because: (1) appellant's conduct served legitimate litigation interests and was, therefore, not intended for the sole purpose of harassing respondents; and (2) respondents' costs of missed vacation and airfare from England were not reasonable expenses under section 128.5. We disagree and affirm.

### (1) Standard of Appellate Review

 It is well settled that the award of sanctions under section 128.5 is a discretionary act on the part of the trial court. (*Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1438 [240 Cal.Rptr. 297].) As the court stated in *580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 19-20 [272 Cal.Rptr. 227]: "Under the appropriate standard of review of an order awarding sanctions under section 128.5, it is not the province of this court 'to consider the record on appeal to determine if appellant's conduct meets the standards of frivolousness . . . . [¶] . . . Where the issue on appeal is whether the trial court has abused its discretion, the showing necessary to reverse the trial court is insufficient if it presents facts which merely afford an opportunity for a different opinion: *"An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.* To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice; . . ." (*Brown* v. *Newby* [1940] 39 Cal.App.2d [615], 618 [].)' (*Winick Corp.* v. *County Sanitation Dist. No. 2* [1986] 185 Cal.App.3d 1170, 1175-1176 [], italics in original.)"

### (2) The Trial Court Did Not Abuse its Discretion by Finding That Appellant Proceeded Frivolously and in Bad Faith

Section 128.5, subdivision (a), provides in part that "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ." The statute further explains that for the purposes of this section " 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) The cases interpreting the cited provisions set out that section 128.5 has greatly extended the power of the trial court to award attorney fees and/or monetary sanctions in order to discourage frivolous litigation. (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 537 [183 Cal.Rptr. 86, 645 P.2d 137, A.L.R.4th 2851] [reissued after vacation in *City of Long Beach* v. *Bozek* (1983) 33 Cal.3d 727 (190 Cal.Rptr. 918, 661 P.2d 1072)]; *Mungo* v. *UTA French Airlines* (1985) 166 Cal.App.3d 327, 333 [212 Cal.Rptr. 369].)

In the present case the trial court found that appellant acted in bad faith, frivolously and solely for the purpose of harassing respondents inasmuch as appellant: "1. Scheduled three discovery motions for the period when they knew defendant's counsel would be unavailable, and refused to voluntarily

reset these motions; [¶] 2. Served eleventh-hour trial subpoenas on defendant Sparks and his hotel manager Tom Muniz, in a case where their trial testimony was not actually necessary or desired; [¶] 3. Scheduled three depositions for the last two weekdays of defendants' counsel's long-planned vacation, and refused to continue depositions until the following Monday; [¶] 4. Failed to produce the most important of the three witnesses, after defendants' counsel returned from England to attend the deposition; [¶] 5. Reset its demurrer in violation of a stipulation with defendants/cross-complainants' counsel, so that opposition would fall due on a date when defendants' counsel was out of the country."

Contrary to appellant's contention, the above findings of the trial court are abundantly supported by the record and the discretionary ruling of the court based on the findings fails to amount to a manifest miscarriage of justice. The summary of the facts set out, *ante*, convincingly demonstrates that appellant made repeated attempts to take advantage of the absence of respondents' counsel by scheduling depositions, motions, court appearances, etc., at a time when counsel for respondents was on a vacation in England. Appellant's intention to harass respondents is illustrated with special clarity by the fact that Lee, appellant's attorney, set the deposition date of Gouzoules, a crucial witness, for Friday, May 17; that he refused to continue the matter until Monday, May 20 when Grayson was due to return to San Francisco; and that he knew that his refusal to agree to such a short continuance would necessitate Grayson's abrupt and costly return from England. Lee's conduct appears all the more outrageous in view of the fact that discovery in the action remained open for almost two more months, until July 10, 1991, and also that Lee failed to produce Gouzoules for the deposition.

Appellant nonetheless argues that the court finding that appellant acted in bad faith and was motivated solely by an intention to harass its opponent is not supported by the record for two primary reasons. One, appellant had a legitimate interest in pursuing discovery in a vigorous manner and, therefore, the conduct of appellant's counsel promoted justified litigation interests. When the conduct of the party serves a legitimate litigation objective, continues appellant, the purpose of the alleged conduct cannot be *solely* for harassment. Two, sanctions under section 128.5 are warranted only if the moving party proves that its adversary's action or tactic was motivated solely by an intention to harass, measured by a subjective standard. (*Optical Surplus, Inc.* v. *Superior Court* (1991) 228 Cal.App.3d 776, 784 [279 Cal.Rptr. 194].) Appellant argues that in the case at bench its subjective intention to harass was not proved because Lee, its attorney, did not know that the testimony of Gouzoules was considered critical by Grayson, and that

she would cancel her remaining vacation because of the Gouzoules deposition. Neither of appellant's contentions is well taken.

■ To begin with, it is widely held that "An attorney has an obligation not only to protect his client's interests but also to *respect the legitimate interests of fellow members of the bar*, the judiciary, and the administration of justice." (*Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, 309 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334], italics added; accord, *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 647 [183 Cal.Rptr. 508, 646 P.2d 179]; *Mungo* v. *UTA French Airlines*, *supra*, 166 Cal.App.3d at p. 333.) The rule set out above makes it obvious that even if a legal step taken or legal procedure pursued has justification in law, the timing thereof may be oppressive and may constitute harassment if it unjustifiably neglects or ignores the legitimate interest of a fellow attorney. The case herein falls within the latter principle. ■ Stated succinctly, even though the filing of the deposition motions by Lee was legally authorized, in the circumstances here and given the *timing* thereof the filing was in bad faith and made for the sole purpose of harassing respondents.

The second argument, that a subjective intent to harass was not proven because Lee, appellant's attorney, did not know that the Gouzoules deposition was considered crucial by Grayson, compelling her early return from England, is without the requisite evidentiary support. Lee's statement that he "was not even aware that Ms. Grayson considered the deposition of Mr. Gouzoules to be of such importance so that she would return from her vacation solely for his deposition" was soundly rebutted by Grayson. She explicitly stated at the hearing that of the three depositions set for May 16 and 17, the Gouzoules deposition was critical and could not be covered by anybody else. She likewise testified that, at the telephone conference with Commissioner Gargano and Lee, she emphasized she would have to come home to personally attend the deposition.[2] ■ It is, of course, elementary that the conflict in evidence is resolved by the trial court and that the appellate court is powerless to disturb the trial court's findings based upon conflicting evidence. (*580 Folsom Associates* v. *Prometheus Development Co.*, *supra*, 223 Cal.App.3d at p. 20; *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 2 [192 Cal.Rptr. 57].)

■ We finally observe the trial court's finding that appellant acted in bad faith and solely to harass respondents is dramatically demonstrated by

---

[2]Grayson's testimony reads in relevant parts as follows: "So I told Mr. Lee that those two I can probably get somebody to cover, it would be hard, but, you know, anybody could cover them, but *Mr. Gouzoula [sic] was critical. . . .* [¶] I had a telephone conference with Commissioner Gargano and Mr. Lee, and I was absolutely frantic, and *I said I would have to come home, that I could not have anybody else cover the Gouzoulas [sic] deposition . . . ."* (Italics added.)

the additional facts that appellant did not even attempt to subpoena Gouzoules as a witness and that the Gouzoules deposition was ultimately cancelled by appellant.

### (3) *The Expenses Awarded by the Trial Court Were Proper*

■ Appellant's second prong of the argument is that the trial court lacked authority to award compensation for airfare and reimbursement for lost vacation because those items were not reasonable expenses within the meaning of section 128.5. (*Brewster* v. *Southern Pacific Transportation Co.* (1991) 235 Cal.App.3d 701 [1 Cal.Rptr.2d 89].) We disagree.

Section 128.5 provides that the trial court may order a party, the party's attorney or both to pay *any reasonable expenses* incurred as a result of bad faith actions and tactics. "Reasonable expenses" have been interpreted to include more than attorney fees and costs. For example, in *580 Folsom Associates* v. *Prometheus Development Co.*, *supra*, 223 Cal.App.3d 1, the appellate court upheld an award of $20,000 compensating a corporate party for the cost of employees' labor expended in defending a meritless cross-complaint. In its reasoning the court stated: ". . . Brobeck argues the trial court improperly awarded as sanctions compensation for time spent by Kaufman and Folsom personnel in defending against the cross-complaint. Brobeck contends the 'expenses' to be awarded as sanctions under section 128.5 cannot include other than costs including attorney's fees. If this were true it would mean that where, as here, a party is entitled to attorneys' fees under Civil Code section 1717 and costs under Code of Civil Procedure section 1032, then no sanctions could be awarded against the losing party no matter how frivolous its conduct or how unscrupulous its bad faith. We refuse to adopt such an interpretation of section 128.5. The term 'expenses' has not been so limited by other courts. [Citations.]" (*Id.* at pp. 27-28.)

In *Bank* v. *Manos* (1991) 232 Cal.App.3d 123, 128-129 [283 Cal.Rptr. 318], the appellate court observed that "an award under Code of Civil Procedure section 128.5 is more like a money judgment compensating a party for harmful conduct than it is like an award of fees as part of the costs of the lawsuit. [¶] . . . Code of Civil Procedure section 128.5 does not refer to costs but instead imposes 'reasonable expenses' as an element of sanctions. . . . [¶] An award of sanctions is more like a money judgment than it is like costs because of the unusual nature of such an award . . . ." In accordance therewith, the court held that "an award of sanctions under Code of Civil Procedure section 128.5 does not represent costs but is essentially a judgment for money damages which must be bonded." (*Id.* at pp. 128-129.)

We follow the guidance gleaned from *580 Folsom Associates* and *Manos* and hold that the expenditure and loss proximately resulting from the

frivolous acts or tactics of appellant constituted reasonable expenses within the statutory definition and were properly awarded as sanctions under section 128.5.

We briefly note that *Brewster* v. *Southern Pacific Transportation Co.*, *supra*, 235 Cal.App.3d 701, is distinguishable and does not counsel a contrary result. In *Brewster* the appellate court held that under section 128.5 the trial court had no authority to impose sanctions in the sum of $139,103.90 against an individual attorney in order to compensate the railroad for lost profits allegedly resulting from a brief closure of certain lines. In so holding, the appellate court characterized the fine as unrelated to cost of the actual proceedings before the court and underlined that the attorney against whom the costs were awarded was entitled to have a jury determine the issues of causation and the amount of damages, both of which were contested. By contrast, in the case herein appellant does not contest the causation and/or the amount of damages resulting from its wrongful conduct. Moreover, the damages here suffered by respondents were more closely related to the litigation than the consequential damages in *Brewster*.

Since we hold that the uncontested, direct damages resulting from appellant's frivolous and bad faith actions were properly awarded under section 128.5, appellant's additional claim that such damages should have been adjudicated in a separate civil suit, is without foundation and must be summarily rejected.

The order is affirmed; appellant to bear costs on appeal; respondents' request for imposing sanctions for a frivolous appeal is denied.

Poché, J., and Perley, J., concurred.