Filed 4/9/26  Anand v. Dept. of Corrections and Rehabilitation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KARUNA ANAND,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>Defendant and Respondent. | C101391<br><br>(Super. Ct. No. 34-2018-00226894-CU-OE-GDS) |

Code of Civil Procedure section 583.310 et seq.[1] requires a plaintiff to bring an action to trial within five years after the date it is filed, unless the deadline is tolled or extended by statute.  As we will discuss in more detail below, case law interpreting section 583.310 teaches that a plaintiff has an obligation to monitor the case in the trial court, to keep track of the relevant dates, to determine whether any scheduling or calendaring errors have occurred, and to take whatever actions are necessary to ensure the action is brought to trial within the five-year period.  That did not happen in this case.  As

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

1

a result, the trial court dismissed plaintiff Karuna Anand's action for failing to bring it to trial by the relevant deadline.  On appeal, Anand argues (1) the time to bring her action to trial should have been tolled for an additional 45 days due to defense counsel's unavailability; (2) she was entitled to an additional six months to bring her action to trial pursuant to section 583.350; and (3) the defendant should be estopped from seeking dismissal because it lulled her into believing it would waive the statutory deadline.  The trial court rejected these arguments, and we affirm its decision in full.

BACKGROUND

On February 9, 2018, Anand filed a complaint against her former employer, California's Department of Corrections and Rehabilitation (CDCR), alleging it terminated her in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) and various other state labor and employment laws.  Pursuant to section 583.310, Anand thus had until February 8, 2023, to bring her action to trial.

Anand filed a first amended complaint in late June, CDCR filed its answer in August, and the parties thereafter began conducting written discovery.

In the meantime, in early 2019, the court set a trial date for March 16, 2020. CDCR began trying to schedule Anand's deposition, but its efforts were slowed due to the fact she had moved to the United Arab Emirates.  In June 2019, the parties stipulated to continue the trial because Anand's deposition could not be scheduled until November 2019, and that would not give them enough time to complete discovery and prepare for trial.  CDCR filed a motion based on the parties' stipulation, and the trial court granted the motion and set a new trial date for October 12, 2020.

Anand cancelled her deposition the day before it was scheduled to start, citing litigation stress.  Her deposition was then rescheduled for May 2020.

In March 2020, the parties once again stipulated to continue the trial date because Anand's May 2020 deposition would not give them enough time to complete discovery

2

and prepare for trial. Based on the parties' stipulation, CDCR filed another motion to continue the trial date.

Also in March 2020, the COVID-19 pandemic hit. As a result, the Sacramento County Superior Court vacated all civil trial dates, including the October 2020 trial date in this case. In response to the pandemic, the Judicial Council adopted emergency rule 10(a), which provided, "Notwithstanding any other law, including Code of Civil Procedure section 583.310, for all civil actions filed on or before April 6, 2020, the time in which to bring the action to trial is extended by six months for a total time of five years and six months." (Cal. Rules of Court, appen. I, emergency rule 10(a).) Pursuant to this emergency rule, Anand now had until August 9, 2023, to bring her action to trial.

Even though civil trials were suspended, the parties continued to conduct written discovery.

Civil trials in the Sacramento County Superior Court resumed in early 2021, and in March, trial in this case was scheduled for August 8, 2022.

In July 2021, Anand's deposition was finally taken.

In June 2022, CDCR learned one of its witnesses had an unforeseen medical issue and would not be available for the August 2022 trial date. The parties thus once again stipulated to continue the trial date. Based on the stipulation, the court vacated the trial date, returned the matter to the trial setting process, and ordered the parties to meet and confer on new trial dates.

In July 2022, one of CDCR's attorneys took an unexpected three-month leave of absence. A second attorney continued working on the case.

In August 2022, Anand's counsel e-mailed CDCR's counsel and proposed three trial dates, all in June 2024. CDCR's counsel responded she would "review with my client and get back to you soon." Two days later, CDCR's counsel e-mailed Anand's counsel to "summarize our call of this afternoon." Among other things, CDCR's counsel stated, "I am still discussing the proposed trial dates with my client. As discussed, the

2024 dates are beyond the 5yr SOL and CDCR wants to consider alternatives. I will get back to you as soon as possible about this issue."[2] Anand states CDCR never got back to her.

In September 2022, the court set a July 2, 2024, trial date. We note this date is more than 10 months beyond the August 9, 2023, deadline. Anand, however, took no action to alert the trial court to this fact or to advance to trial date.

In late February 2023, one of CDCR's attorneys left, and as of March, two attorneys—B.B. and J.H.—were assigned to the case. At the end of March, CDCR sent a "notice of unavailability" stating both attorneys would be unavailable "for any purpose whatsoever" from October 17 through November 17, 2023.

Two months later, attorney B.B. went out on an unexpected medical leave. In June, CDCR sent another notice of unavailability stating B.B. was on extended medical leave from May 24 to November 20, 2023. The notice also stated the other assigned attorney, J.H. would be unavailable (1) on July 28, (2) from August 30 through September 13, and (3) from October 17 through October 27.

In early November, Anand's counsel e-mailed CDCR's counsel to request available dates to depose several witnesses. On November 7, J.H. responded, "We appreciate your patience. [B.B.'s] return date is still uncertain. I will check with CDCR to see if it will stipulate to a continuance of the trial date and all related dates to provide the parties more time to complete discovery to make up for the delay caused by the transition to new defense counsel and her leave, if Plaintiff is interested. Please let me know." On November 9, Anand's counsel responded, "Plaintiff is not interested in postponing the trial—thank you. It has already been pushed out."

---

[2] At the hearing on CDCR's motion to dismiss, Anand's counsel stated she provided dates beyond the five-year deadline because those were the only ones available on the trial court's calendar.

4

On November 30, Anand's counsel e-mailed CDCR a stipulation to continue the five-year deadline and asked it to "review and sign if acceptable." The stipulation stated, "the deadline for this action to be brought to trial under California Civil Procedure Code section 583.310 and Emergency Rule [10(a)] is presently August 9, 2023," the trial was "currently scheduled for July 2, 2024," and the parties "agree to extend the deadline to bring this case to trial from August 9, 2023, to December 31, 2024." On December 4, CDCR's counsel responded, "CDCR never agreed to stipulate to extend the statutory deadline to bring the action to trial, so it is unclear to me why Plaintiff is sending this stipulation. Further, that deadline has now passed. Therefore, the CDCR will not sign Plaintiff's proposed stipulation."

Three days later, CDCR filed a motion to dismiss the action for failure to bring it to trial within the five years and six months—or by August 9, 2023—as required by section 583.310 and emergency rule 10.

Anand opposed the motion, arguing the time to bring the case to trial was tolled due to impossibility for three months due to CDCR's first assigned counsel's medical leave in 2022, and for an additional six months due to B.B.'s medical leave in 2023. She also argued section 583.350 gave her an additional six months to bring the case to trial from the time the last tolling period ended. Finally, she argued CDCR was estopped from arguing the case should be dismissed.

The trial court granted the motion. It began by noting that, taking emergency rule 10 into account, Anand had to bring her case to trial by August 9, 2023. It also found it was impossible to bring her case to trial for an additional 109 days, when civil trials were suspended due to COVID-19. That brought the deadline to bring the action to trial to November 27, 2023.

The trial court then found CDCR's first counsel's medical leave did not toll or extend the deadline because B.B. was available and litigating the case on CDCR's behalf during that time. It also found B.B.'s 2023 medical leave did not toll or extend the

5

deadline because J.H. took over the case during this time, and although J.H. was unavailable for portions of this time, Anand failed to establish a causal connection between J.H.'s unavailability and her failure to bring the case to trial by the deadline.

The trial court also noted the six-month grace period in section 583.350 only applied if "at the end of the period of tolling . . . less than six months remains within which the action must be brought to trial." Here, however, "the end of the tolling period was January 4, 2021, when civil jury trials resumed."

Finally, the trial court rejected Anand's estoppel argument, finding she failed to establish CDCR agreed to waive the five-year statute or did or said anything that would have made her believe it agreed to waive it.

Judgment dismissing the action was entered on April 5, 2024, and Anand filed a timely notice of appeal.

DISCUSSION

1. *The Statutory Scheme and the Standard of Review*

Section 583.310 provides, "An action shall be brought to trial within five years after the action is commenced against the defendant." This requirement is "mandatory" and is "not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.360, subd. (b).) "Thus, unless some specified exception applies, a trial court has a mandatory duty to dismiss an action and a defendant has an absolute right to obtain an order of dismissal, once five years has elapsed from the date the action was commenced." (*M & R Properties v. Thomson* (1992) 11 Cal.App.4th 899, 903.) Section 583.340 provides that, in computing the time within which an action must be brought to trial, the time during which "[b]ringing the action to trial . . . was impossible, impracticable, or futile" shall be excluded or tolled. (§ 583.340, subd. (c).) Finally, section 583.350 provides, "If the time within which an action must be brought to trial . . . is tolled or otherwise extended pursuant to statute with the result that at the end of the period of tolling or extension less than six months remains within which the action must

6

be brought to trial, the action shall not be dismissed . . . if the action is brought to trial within six months after the end of the period of tolling or extension."

One of the primary issues in this case is whether it was impossible, impracticable, or futile to bring this action to trial within the statutory deadline. "What is impossible, impracticable or futile must be determined in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case." (*Moran v. Superior Court* (1983) 35 Cal.3d 229, 238.) "The exercise of reasonable diligence requires a plaintiff to ' "keep track of the pertinent dates which are crucial to maintenance of his lawsuit, and to see that the action is brought to trial within the five-year period." ' " (*Wilcox v. Ford* (1988) 206 Cal.App.3d 1170, 1175.) "A plaintiff has an obligation to monitor the case in the trial court, to keep track of relevant dates, and to determine whether any filing, scheduling, or calendaring errors have occurred. This obligation of diligence increases as the five-year deadline approaches." (*Jordan v. Superstar Sandcars* (2010) 182 Cal.App.4th 1416, 1422.) " ' "Moreover, reasonable diligence alone is not sufficient to protect a party from an involuntary dismissal; rather, reasonable diligence constitutes a guideline by which to assess the existing exceptions of impossibility, impracticability, or futility." ' " (*Sanchez v. City of Los Angeles* (2003) 109 Cal.App.4th 1262, 1270 (*Sanchez*).)

" 'The question of impossibility, impracticability, or futility is best resolved by the trial court, which "is in the most advantageous position to evaluate these diverse factual matters in the first instance." [Citation.] The plaintiff bears the burden of proving that the circumstances warrant application of the . . . exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion. [Citations.]' [Citation.] Under that standard, '[t]he trial court's findings of fact are reviewed for

7

substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1100 (*Gaines*); see also *Sanchez, supra*, 109 Cal.App.4th at p. 1271 ["Where a trial court has discretionary power to decide an issue, we are not authorized to substitute our judgment for that of the trial court. [Citation.] Reversible abuse exists only if there is no reasonable basis for the trial court's action, so that the trial court's decision exceeds the bounds of reason"].)

Anand argues we should review the trial court's findings and decision de novo because this case "turn[s] on the interpretation of various writings." Presumably, by "various writings" she refers to the declarations, e-mails, and other communications between the parties that were submitted in support of and opposition to the motion to dismiss. To support her argument that we should review the trial court's decision de novo she cites *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485 for the proposition that "the trial court's construction of the language of [a] settlement agreement . . . is reviewed de novo, inasmuch as there is no conflicting extrinsic evidence as to its meaning." (*Id.* at pp. 1497-1498.) This rule, however, applies to the interpretation of written contracts and stipulations. (See, e.g., *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432-433 [interpretation of written contracts]; *Munoz v. City of Tracy* (2015) 238 Cal.App.4th 354, 358 [interpretation of written stipulations].) We are aware of no similar rule allowing de novo review of a trial court's findings regarding impossibility, impracticability, or futility when those findings are based on declarations, e-mails, and other written communications between the parties. In any event, this may be a distinction without a difference because, as we explain below, we would uphold the trial court's determination regarding impossibility, etc., regardless of the standard of review.

2.    *The Relevant Dates*

The relevant dates are undisputed. Anand filed her complaint on *February 9, 2018*. Without extensions or tolling, she was thus required by section 583.310 to bring

8

her action to trial by *February 8, 2023*. Emergency rule 10(a) extended this deadline by six months, or to *August 9, 2023*. And the trial court extended it by an additional 109 days to account for the fact that civil trials were suspended, or to *November 27, 2023*.

Anand does not contest these dates. She thus had over five years and nine months to bring her action to trial. It is undisputed she failed to do so. She argues, however, that (1) the deadline should have been tolled or extended for an additional 45 days due to CDCR's "total unavailability between July 28 and November 17, 2023," which would have brought the deadline to January 11, 2024, *and* (2) she should have been given an additional six months pursuant to section 583.350, which would have brought the deadline to July 11, 2024. We disagree.

3.      *The Unavailability of CDCR's Counsel*

In early 2023, CDCR was represented by B.B. and J.H. B.B. was on medical leave from May 24 through November 20, 2023, and J.H. was unavailable during roughly 45 days of this same time period. CDCR served two notices of unavailability advising Anand that, on these dates, B.B. and J.H. "will be unavailable for any purpose whatsoever, including, but not limited to, receiving notice of any kind, responding to ex parte applications, appearing in court, or attending depositions." The notices also stated, "Scheduling an appearance or other matters in counsel's absence is conduct subject to discipline. (*Tenderloin Housing Clinic, Inc. v. Sparks* (1992) 8 Cal.App.4th 299.)"**[3]** Anand argues her time to bring the action to trial should have been tolled for the 45 days B.B. and J.H. were both unavailable, because it was impossible, impracticable, or futile to bring the action to trial during this time. We disagree.

We note at the outset that Anand did not clearly raise this argument in the trial court. Instead, she argued the time to bring the action to trial was tolled for six months

---

**[3]**      We will discuss the *Tenderloin* case and the legal effect of these notices in more detail below.

9

due to B.B.'s medical leave, contending as follows: "The five-year rule was tolled . . . due to defense counsel [B.B.'s] medical leave from May 24, 2023 to November 20, 2023"; "The Five Year Statute Was Tolled [Due To] Defense Counsel [B.B.'s] Medical Leave"; "Defense Counsel [B.B.'s] Extended Medical Leave Tolled The Period for an Additional 6 Months"; and "the tolling periods" include "Impossibility due to defense counsel [B.B.'s] medical leave from May 24, 2023-November 20, 2023 (6 months)." She did not contend the time was tolled due to J.H.'s unavailability.

The trial court found Anand failed to meet her burden of proving it was impossible or impracticable to bring her case to trial during the entirety of B.B.'s leave, because attorney J.H. took over handling the case during this time. J.H. submitted a declaration stating, "I continued to represent CDCR in this action while [B.B.] was on leave and was able to try the case had it been advanced to a date before the limitations period expired. Further, had the trial date been advanced to a date within the limitations period, another Deputy Attorney General likely would have been assigned to assist me with the representation at trial, as it is the practice of our section to assign a second attorney to assist with a trial a month or two before the trial date."

On appeal, Anand appears to have dropped the argument that the time to bring the action to trial was tolled during B.B.'s six-month leave. Instead, she focuses on the 45 days between July 28 and November 17, 2023, that J.H. was also unavailable. Arguably, she has forfeited this argument on appeal by failing to raise it below. (See *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal"].) In any event, the trial court essentially rejected this argument when it found Anand failed to demonstrate that J.H.'s periods of unavailability made it impossible or

10

impracticable to bring the action to trial by the statutory deadline,[4] and this finding is supported by substantial evidence and is not an abuse of discretion.

"It is well established that ' " '[e]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation.' [Citation.]" ' [Citations.] ' "Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar [is] not within the contemplation of these exceptions." ' [Citations.] This rule reflects the Legislature's understanding that a reasonably diligent plaintiff should be able to bring the case to trial within the relatively lengthy period of five years notwithstanding such ordinary delays. [Citation.] To hold otherwise would allow plaintiffs to litigate piecemeal every period, no matter how short, in which it was literally impracticable to try the case, thus rendering the statute 'utterly indeterminate, subjective, and unadministrable.' " (*Gaines, supra*, 62 Cal.4th at p. 1101.)

This same rule applies to the unavailability of counsel. As the court explained in *Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court* (1990) 217 Cal.App.3d 464 (*Sierra Nevada*), "In the course of five years it is reasonable to expect that counsel will suffer a number of days when illness will prevent his attendance to his practice. Similarly, it is reasonable to expect that counsel will have to attend to other business,

---

[4] Anand complains the trial court miscounted the days J.H. was unavailable because it stated she "took a brief *16 day* leave of absence that coincided with [B.B.'s] leave" (italics added), when, in fact, she was unavailable for 45 days. Contrary to Anand's assertion, the trial court *did* recognize that J.H. was unavailable for 45 days, because, immediately after finding Anand failed to prove a causal connection between J.H.'s 16 days of leave and her failure to bring the case to trial, it found, "*Similarly*, Plaintiff has failed to meet her burden to establish *the one month period* pursuant to CDCR's Notice of Unavailability made it impossible, impracticable, or futile to bring her case to trial." (Italics added.)

11

personal and professional, including, for example, days off and vacations.  The five-year period contains an allowance for the time so consumed in the same manner as it allows for the usual and ordinary proceedings attendant to moving the case to trial.  It would render the statute utterly indeterminate, subjective, and unadministerable, and thus absurd, to read an open-ended sick leave program for counsel into the tolling provisions of section 583.340, subdivision (c)." (*Id*. at pp. 472-473.)  The court then held, "The text of section 583.340 impels the view that there must be a *causal connection* between the circumstance upon which plaintiff relies and the failure to satisfy the five-year requirement.  Bringing the action to trial must be impossible, impracticable, or futile *for the reason proffered*." (*Id*. at p. 473, italics added.)  Finally, it held, "A bare showing that a counsel was ill [or otherwise unavailable] does not warrant the attribution of such causation." (*Ibid*.; see also *Him v. Superior Court* (1986) 184 Cal.App.3d 35, 39 [" '[delay] attributable to sickness or death of counsel . . . is not *necessarily* excusable. Each case must be decided on its own peculiar features and facts' "].)  Anand thus had to show it was impossible or impracticable to bring this action to trial by November 27, 2023, *because* J.H. was unavailable on July 28, August 30 through September 13, and October 17 through November 17.

    *Sierra Nevada* teaches there are generally "[t]wo kinds of circumstances . . . in which it may be appropriate to say that the illness [or unavailability] of counsel has *caused* the plaintiff to fail to bring the case to trial in compliance with the five-year requirement.  The first is when an illness of counsel occurs at the end of the five-year period *in circumstances in which it is likely that counsel, but for the illness, would have become aware of the impending deadline and taken the appropriate action to avert the transgression*.  The second is an *unusually lengthy illness of sole counsel* which deprives the plaintiff of a substantial portion of the five-year period for prosecution of the lawsuit." (*Sierra Nevada, supra*, 217 Cal.App.3d at p. 473, second and third italics added.)  Neither circumstance is present here.

12

First, J.H.'s 45-day period of unavailability was not "unusually lengthy," and thus did not deprive Anand of "a substantial portion" of the five-year nine-month period to bring her action to trial. (*Sierra Nevada, supra*, 217 Cal.App.3d at p. 473.) Moreover, J.H. was not CDCR's sole counsel, and, as she stated in her declaration, "had the trial date been advanced to a date within the limitations period, another Deputy Attorney General likely would have been assigned to assist me with the representation at trial, as it is the practice of our section to assign a second attorney to assist with a trial a month or two before the trial date." And as the trial court aptly noted at the hearing on the motion to dismiss, "It was your [i.e., Anand's] responsibility to bring this to trial. [¶] You're up against the AG's office. They have like 400 lawyers in Sacramento. If you go in ex parte to the presiding judge . . . and say the five-year statute runs on this day, give us a trial date, the presiding judge is going to give you a trial date. [¶] And even if [CDCR] say[s] . . . this person has this medical thing . . . , Rob Bonta, the AG, is going to have to find one of his lawyers . . . to try this case because that's how it works. That was your responsibility, and you failed."

Second, there is no evidence that J.H.'s unavailability in any way contributed to Anand's counsel's failure to be "aware of the impending deadline" or prevented her from "tak[ing] the appropriate action" to set the case for trial before the deadline expired. (*Sierra Nevada, supra*, 217 Cal.App.3d at p. 473.) In addition, *Sierra Nevada* involved the unavailability of plaintiff's counsel, while this case involves the unavailability of defense counsel. (*Id*. at pp. 467-469.) In *Sanchez, supra*, 109 Cal.App.4th at page 1273, the court noted, "the illness or [unavailability] of *defense* counsel does not create the same impediment to a plaintiff's prosecution of his or her case" as the illness or unavailability of plaintiff's counsel, because the plaintiff could "insist" on setting the trial by the deadline "unless defendants stipulated to extend the" statutory period. Here, Anand did not insist on setting the trial by the deadline unless CDCR stipulated to extend the statutory period.

Anand "had a duty to take whatever . . . measures were available to attempt to accelerate trial of the case before expiration of the five-year period, including bringing a motion to advance the trial." (*De Santiago v. D & G Plumbing, Inc.* (2007) 155 Cal.App.4th 365, 374.) In September 2022, the court scheduled the trial for July 2024, which was almost one year beyond the August 9, 2023, statutory deadline as extended by emergency rule 10(a). It was Anand's responsibility to keep track of that deadline, and she "had a duty to bring to the trial court's attention the fact that [it] set the trial for a date after expiration of the five-year period, and object." (*De Santiago*, at p.374.) At that point, Anand had "ample time to move to advance the trial date," yet she made no attempt to do so until December 2023, which was well after the deadline had passed. (*Ibid.*) She was thus "not reasonably diligent in prosecuting [her] case due to acquiescing in the court's setting the trial date beyond the five-year mark. [Anand's] counsel failed to alert the trial court that the selected trial date was beyond the five-year mark and failed to request the court set an earlier trial date. [Anand] also did not move to advance the trial to a date before the five-year mark and did not object to the court setting the trial beyond the mark." (*Id*. at p. 375.) And because she "was not reasonably diligent in bringing [her] case to trial" by the statutory deadline, "the impracticability exception does not apply." (*Ibid*.; see also *Hill v. Bingham* (1986) 181 Cal.App.3d 1, 10 ["the sine qua non of the exception[] is reasonable diligence by the plaintiff in prosecuting the case" and acquiescing in the trial court setting a trial date beyond the statutory deadline "manifest[s] a lack of diligence"]; *Sizemore v. Tri-City Lincoln Mercury, Inc.* (1987) 190 Cal.App.3d 84, 87, 89 [a plaintiff cannot avoid dismissal by inadvertently acquiescing to a date beyond the statutory period].)

*Sanchez, supra*, 109 Cal.App.4th 1262, is instructive in this regard. In that case, the five-year deadline was January 10, 2002, and trial was scheduled for September 18, 2001. On July 7, 2001, a defendant's attorney committed suicide. The defendant retained new counsel shortly thereafter and the parties stipulated to continue the trial date

14

to December 18, 2001. At a conference call on September 25, the trial court asked how long the parties required to prepare for trial and, based on information provided by the parties and to allow sufficient time for the defendant's new attorney to get up to speed, the trial court set the trial for January 29, 2002. Nobody alerted the trial court that date was beyond the five-year deadline. (*Id*. at p. 1267.) At a final status conference held on January 17, the trial court checked the file and realized the five-year deadline to bring the action to trial had passed. (*Ibid*.) The defendants promptly filed a motion to dismiss pursuant to section 583.310, and, "[i]n opposition, plaintiffs argued the five-year statute was tolled on the grounds of impracticability, impossibility or futility because [counsel's] suicide on July 7, 2001, caused the September 18, 2001 trial date to be vacated, and resulted in several months of delay in selecting replacement counsel, providing new counsel with [prior counsel's] files and bringing him up to speed on the case." (*Sanchez*, at p. 1268.)

The trial court granted the motion and the appellate court affirmed, finding "there was no causal connection between the circumstances upon which plaintiffs are relying and their failure to bring the action to trial within five years. The failure to bring the action to trial within five years was not due to the suicide of [the defendant's] attorney; nor was it due to the four-month period between the date [the defendant's] need for independent counsel arose and [counsel's] entry into the case." (*Sanchez, supra*, 109 Cal.App.4th at p. 1272.) Instead, it was due to plaintiffs' counsel's "lack of diligence in failing to keep apprised of the case's chronology" and "inadequate oversight." (*Ibid*.) The court also held, "The death of defendant['s] attorney did not result in a situation over which plaintiffs had no control. At that juncture, plaintiffs could have continued to insist on the existing September 18, 2001, trial date or some other trial date within the five-year mark, unless defendants stipulated to extend the five-year period. However, plaintiffs simply acquiesced in the setting of a trial date beyond the five-year mark, without securing a stipulation from defendants." (*Id*. at p. 1273.) Finally, it held, " ' "Where a

15

plaintiff possesses the means to bring a matter to trial before the expiration of the five-year period by filing a motion to specially set the matter for trial, plaintiff's failure to bring such motion will preclude a later claim of impossibility or impracticability." ' " (*Id.* at p. 1274.)  The *Sanchez* court's conclusion is equally applicable here:  "Plaintiffs did not exercise reasonable diligence to ensure that the case was brought to trial within the statutory period—plaintiffs simply overlooked the five-year mark.  Not surprisingly, the trial court found unpersuasive plaintiffs' after-the-fact rationalization that various circumstances, including [defense counsel's] suicide, made it impracticable to try the action within five years.  On this record, we perceive no abuse of discretion in the trial court's rejection of plaintiffs' claim of impracticability." (*Ibid*.)  So, too, in this case.

Anand makes one other argument that is related to her primary argument regarding impossibility.  She contends that once CDCR served notices advising her that B.B. and J.H. were unavailable on particular dates, she would have faced sanctions if she had pursued discovery or scheduled motions or court appearances on those dates.  She then argues it would not be fair to force her to choose between risking sanctions by ignoring CDCR's notices of unavailability, or risking dismissal under sections 583.310.  This argument is based largely on *Tenderloin Housing Clinic, Inc. v. Sparks, supra*, 8 Cal.App.4th 299.  In *Tenderloin*, the plaintiff's attorney scheduled the deposition of a critical witness on a date he knew defense counsel, who was a sole practitioner, would be on vacation.  When he refused to continue the deposition to the following week, defense counsel cut her vacation short and returned to protect her clients' interests, only to learn upon her arrival that the deposition had been canceled.  (*Id*. at pp. 302-303.)

The defendants moved for sanctions pursuant to section 128.5, which provides, "A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).)  The trial court granted the motion and awarded the defendants almost $2,000

16

in sanctions.  (*Tenderloin Housing Clinic, Inc. v. Sparks, supra*, 8 Cal.App.4th at p. 303.)
The plaintiff appealed and the appellate court affirmed, holding the award was
"abundantly supported by the record." (*Id*. at p. 305.)  Among other things, the court
found the record "convincingly demonstrates that [the plaintiff] made repeated attempts
to take advantage of the absence of [the defendants'] counsel by scheduling depositions,
motions, court appearances, etc., at a time when counsel for [the defendants] was on a
vacation in England.  [The plaintiff's] intention to harass [the defendants] is illustrated
with special clarity by the fact that [the plaintiff's] attorney[] set the deposition date of
. . . a crucial witness[] for Friday, May 17; that he refused to continue the matter until
Monday, May 20 when [defense counsel] was due to return to San Francisco; and that he
knew that his refusal to agree to such a short continuance would necessitate [defense
counsel's] abrupt and costly return from England.  [The plaintiff's counsel's] conduct
appears all the more outrageous in view of the fact that discovery in the action remained
open for almost two more months, until July 10, 1991, and also that [the plaintiff's
counsel] failed to produce [the crucial witness] for the deposition." (*Ibid*.)  The court
noted, " '[a]n attorney has an obligation not only to protect his client's interests but also
to respect the legitimate interests of fellow members of the bar.' " (*Id*. at p. 306, italics
omitted.)  As a result, "even if a legal step taken or legal procedure pursued has
justification in law, the timing thereof may be oppressive and may constitute harassment
if it unjustifiably neglects or ignores the legitimate interest of a fellow attorney.  The case
herein falls within [this] principle." (*Ibid*.)

The *Tenderloin* case has inspired the widespread practice of lawyers filing notices
of unavailability such as the two notices CDCR served in this case.  Our colleagues in the
Fourth Appellate District have criticized the practice and have held a notice of
unavailability does *not* amount to a "unilaterally called . . . litigation timeout." (*Carl v.
Superior Court* (2007) 157 Cal.App.4th 73, 76.)  As the court explained, "*Tenderloin*, of
course, merely holds that a trial court may impose sanctions against an attorney who

17

conducts litigation in bad faith and solely for the purpose of harassment. There, among other things, the sanctioned attorney purposefully set discovery for times when he knew opposing counsel was on vacation and unavailable in order to gain an unfair tactical advantage in the litigation. Nothing in *Tenderloin*, however, expressly condones the practice that has grown up around its name. It has simply been made up." (*Ibid*.) The court also explained, "any party who feels the uncomfortable pinch of an oncoming deadline may seek appropriate relief." (*Id*. at p. 77.) In other words, in light of the oncoming deadline to bring her case to trial, Anand could have, *and should have*, sought appropriate relief *even in the face of CDCR notices of unavailability.* As at least two federal district courts have held, "absent a court order, a notice of unavailability does not operate to, in effect, stay the litigation of a case." (*Electracash, Inc. v. Kahn* (C.D.Cal. July 10, 2006, No. CV 05-1135 RSWL (FMOx)) 2006 U.S.Dist. Lexis 103085, p. *7; see also *Kurdi v. Cal. DOT* (E.D.Cal. Aug. 8, 2023, No. 1:22-cv-00729-JLT-EPG) 2023 U.S.Dist. Lexis 138394, p. *2.) Similarly, we find the notices of unavailability in this case did not operate to effectively toll the statutory deadline by making it impossible or impracticable to bring a case to trial.

In closing, while we are not unsympathetic to Anand's argument that she should not be punished for her counsel's willingness to work cooperatively with CDCR's counsel and to respect counsel's unavailability, we respond to this argument by paraphrasing our Supreme Court's decision in *Gaines*: "While attempts to work cooperatively are to be lauded, they do not absolve litigants from the obligation to prosecute claims within the statutory guidelines. Established case law advised [Anand] to seek an express stipulation from the parties that the agreed-upon postponements would extend the five-year period. [Citation.] [Anand] did not do so. Our holding affords due deference to the trial court's unique ability to determine, based on all of the facts before it, that [Anand] did not demonstrate a circumstance of impossibility, impracticability, or futility arising from this period." (*Gaines, supra*, 62 Cal.4th at p. 1105.)

18

*4.* *Section 583.350's Six-month Grace Period*

Section 583.350 provides, "If the time within which an action must be brought to trial . . . is tolled or otherwise extended pursuant to statute with the result that at the end of the period of tolling or extension less than six months remains within which the action must be brought to trial, the action shall not be dismissed . . . if the action is brought to trial within six months after the end of the period of tolling or extension." Anand argues this section applied, and it extended the time to bring her action to trial for an additional six months. Like the trial court, we disagree.

The trial court found the five-year deadline was extended (1) by six months pursuant to emergency rule 10(a), and (2) by an additional 109 days because the court's suspension of civil trials due to COVID-19 made it "impossible, impracticable, or futile within the meaning of Code of Civil Procedure section 583.340(c)." As just noted, section 583.350's six-month grace period only applies if the time to bring an action to trial "is tolled or otherwise extended *pursuant to statute*." (Italics added.) In *Ables v. A. Ghazale Brothers, Inc.* (2022) 74 Cal.App.5th 823, 828, the court held, "Because emergency rule 10(a) is not a statute but an administrative rule, it [does] not extend [the plaintiff's] deadline pursuant to statute and [does] not trigger section 583.350's extra six-month period." We agree.

As for the additional 109 days of tolling due to the court's suspension of civil trials, that suspension, and thus the tolling period due to the suspension, ended on January 4, 2021. Section 583.350's grace period only applies if "*at the end of the period of tolling* . . . less than six months remains within which the action must be brought to trial." (Italics added.) When the tolling period ended on January 4, 2021, Anand still had over 34 months (or to November 27, 2023) to bring her action to trial. Section 583.350's grace period thus does not apply.

19

## 5. *Equitable Estoppel*

Anand also argues that even if she failed to bring her case to trial within the statutory deadline, CDCR is equitably estopped from asserting the deadline. "The doctrine of equitable estoppel is applicable to section 583.310 dismissal motions. [Citations.] If a trial court finds statements or conduct by a defendant which lulls the plaintiff into a false sense of security resulting in inaction, and there is reasonable reliance, estoppel must be available to prevent defendant from profiting from his deception." (*Tejada v. Blas* (1987) 196 Cal.App.3d 1335, 1341.) "Equitable estoppel requires that (1) the party to be estopped was aware of the operative facts and either intended that its act or omission be acted upon, or acted in such a way that the party asserting estoppel rightfully believed it was intended; and (2) the party asserting estoppel was unaware of the facts and relied on the other party's conduct to its detriment. [Citation.] The party asserting estoppel has the burden to establish these elements." (*Gaines, supra*, 62 Cal.4th at p. 1097.) Moreover, "simple reliance on a false statement or conduct is not enough. In order to invoke the doctrine of equitable estoppel, the reliance must be reasonable." (*Brown v. Chiang* (2011) 198 Cal.App.4th 1203, 1227.)

"The determination of whether a defendant's conduct is sufficient to invoke the doctrine is a factual question entrusted to the trial court's discretion. [Citation.] The issue is whether, viewing the evidence and all the inferences therefrom in the light most favorable to the defendants, there was substantial evidence upon which the court could reasonably have found as it did." (*Cuadros v. Superior Court* (1992) 6 Cal.App.4th 671, 675.)

Anand contends CDCR, by its statements or conduct, lulled her into believing it would waive the statutory deadline and/or agreed the trial could be held in July 2024, as scheduled. The trial court found no statements or conduct on CDCR's part that suggested it would waive or extend the deadline, and this finding is supported by substantial evidence.

20

It is undisputed there was no written agreement to extend or waive the deadline. Indeed, at the hearing on the motion to dismiss, Anand's counsel acknowledged, "If there was a signed stipulation to extend the five-year deadline or even a written agreement or an agreement in open court to a date beyond the five-year deadline," "we wouldn't need the estoppel argument."

Anand argues CDCR should be estopped to assert the deadline because it "moved for three trial continuances." We disagree, for two reasons.

First, although it is true CDCR filed three motions to continue the trial, all three motions were based on the *parties' stipulations* to continue the trial, and all three stipulations were filed well before the statutory deadline. Moreover, and more importantly, it is undisputed the parties' stipulations did not seek to continue the trial to a date beyond the five-year deadline. The first stipulation asked the court to set a trial date of October 12, 2020; the second stipulation asked the court to set a trial date "no earlier than July[] 2021, or as soon thereafter as the Court calendar permits"; and the third stipulation asked the court to return the parties to the trial setting process "for selection of trial dates that are mutually acceptable to all parties." This is thus not a case where CDCR should be estopped from asserting the statutory deadline because it stipulated to a trial date beyond the deadline. (Cf. *Munoz v. City of Tracy, supra*, 238 Cal.App.4th at p. 360 [holding a written stipulation that continues the trial to a date beyond the five-year statute has " 'the effect of extending the statutory period to the date to which the trial was postponed' "].) And a stipulation asking the court to " 'reset [the trial] for some convenient date' " is not sufficient to establish estoppel. (*Hastings v. Superior Court* (1955) 131 Cal.App.2d 255, 256, 258.)

Second, we do not agree with Anand's contention that any request or stipulation by CDCR to continue the trial date forever estops it from asserting the statutory deadline. *Ward v. Levin* (1984) 161 Cal.App.3d 1026 is instructive. The five-year deadline in that case expired in March of 1983, and trial was set for January 1983. (*Id.* at p. 1033.) On

21

the date set for trial, the defendants asked the court to continue the trial " 'for four months,' " or to sometime in April, and the court set the trial for April 14. (*Id*. at p. 1034.) On April 14, the matter was trailed on the court's own motion, and on May 2, the defendants filed a motion to dismiss for failure to timely bring the action to trial. (*Id*. at p. 1031.) The trial court granted the motion, and the appellate court reversed, holding the "defendants were estopped to assert the five-year limitation . . . *before April 14, 1983*." (*Id*. at p. 1034, italics added.) As relevant here, however, the court also held the defendants "were *not* estopped to seek dismissal of plaintiff's action *at a later date*."[5] (*Ward*, at p. 1034, italics added.) In other words, by asking the court to continue the trial to April 14, the defendants were estopped to assert April 14 was past the five-year deadline, but they were not estopped to assert some later trial date was past the deadline. Anand quotes the following statement from *Rose v. Scott* (1991) 233 Cal.App.3d 537, 541 (albeit with no further discussion or analysis): "[T]he general rule is that when a party seeks a continuance of trial, that party is estopped to assert limitation periods for bringing an action to trial." Although the quote from *Rose* is accurate, to the extent it can be read as holding that a defendant who seeks to continue the trial is forever estopped from asserting the deadline, we disagree, because such a holding conflicts with our Supreme Court's holding in *Miller & Lux, Inc. v. Superior Court* (1923) 192 Cal. 333, 337, that "[i]t is . . . well settled that any stipulation of the defendants extending the statutory period did not operate as a waiver for all future time of the right of defendants to a dismissal after the expiration of the extended period." The parties' three stipulations to continue the trial in this case thus did not estop CDCR from asserting Anand failed to bring her action to trial by the statutory deadline.

---

[5]     The *Ward* court went on to hold that, after April 14, it was impossible, impracticable, or futile to bring the action to trial because the matter was trailed due to a lack of courtrooms. (*Ward v. Levin, supra*, 161 Cal.App.3d at pp. 1034-1035.)

*Gaines, supra*, 62 Cal.4th 1081 is instructive on this point. There, the trial court dismissed a lawsuit for failing to bring it to trial within five years, and the appellate court and our Supreme Court affirmed. The lawsuit was filed in November 2006, and in April 2008, the parties stipulated to (partially) stay the action for 120 days while the parties participated in mediation. Mediation was not successful and the stay was lifted. One of the issues on appeal was whether the "defendants, having agreed to the 120-day partial stay, are estopped from claiming that the five-year statute was not tolled for that period." (*Id*. at p. 1097.) Our Supreme Court held the defendants were *not* estopped because the parties' communications about the stipulation and the stipulation itself did not mention tolling of the five-year period, and the stay "ended well before the five-year period expired." (*Id*. at p. 1099; see *id*. at pp. 1098-1099.) So, too, in this case. None of the parties' stipulations mentioned tolling the five-year period, none sought to continue the trial to a date beyond the five-year period, and all were filed well before the five-year period expired.

Anand also points to two e-mails to support her estoppel argument—an August 2022 e-mail from B.B., and a November 2023 e-mail from J.H. She argues the trial court either "misread" or "overlooked" these e-mails, and that they establish CDCR was estopped from seeking dismissal for failing to bring her action to trial within the statutory deadline. Neither e-mail estops CDCR from asserting the statutory deadline.

The background to B.B.'s August 2022 e-mail is as follows. In June 2022, the parties stipulated to continue the August 2022 trial date due to the unavailability of a critical witness and they asked the court to "return this matter to the Trial Setting Process for selection of trial dates that are mutually acceptable to all parties." As requested, the court vacated the trial date, ordered the parties to confer and agree on a new trial, and stated if they did not notify the court within 60 days of their selection it would assign the next available trial date. In response to the court's order, on August 22, Anand's counsel sent an e-mail to CDCR's counsel proposing three possible trial dates, all in June 2024.

23

On August 24, B.B. sent an e-mail to Anand's counsel "[t]o briefly summarize our call of this afternoon." Among other things, B.B. wrote, "I am still discussing the proposed trial dates with my client. As discussed, the 2024 dates are beyond the 5yr SOL and CDCR wants to consider alternatives. I will get back to you as soon as possible about this issue." According to Anand's counsel, B.B. never got back to her, and in September, the court scheduled the trial for July 2, 2024, which was well beyond the statutory deadline.

We find it telling that although Anand's counsel submitted a lengthy declaration in opposition to the motion to dismiss, she does *not* state that B.B.'s e-mail led her to believe CDCR had agreed to waive the five-year deadline, and we would be hard pressed to interpret B.B's e-mail as suggesting it had. An essential element of equitable estoppel is that the party to be estopped, here CDCR, "acted so as to cause the other party *reasonably to believe* reliance was intended." (*Medina v. Board of Retirement* (2003) 112 Cal.App.4th 864, 868, italics added.) Again, "simple reliance . . . is not enough. In order to invoke the doctrine of equitable estoppel, the reliance must be reasonable." (*Brown v. Chiang, supra*, 198 Cal.App.4th at p. 1227; see also *Adoption of S.S.* (2021) 72 Cal.App.5th 607, 631 [" 'Reliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances' "].) We fail to see how Anand or her counsel could *reasonably* have believed based on B.B.'s e-mail that CDCR had agreed to waive the statutory deadline. If anything, B.B.'s e-mail should have alerted Anand that the July 2024 trial date was beyond the statutory deadline, that CDCR was aware the date was beyond the deadline, and that Anand thus needed to file a motion to advance the trial to a date within the deadline or risk dismissal.

It is also telling that Anand's counsel does *not* state she did or refrained from doing anything in reliance on B.B.'s e-mail. For example, she does not state she relied on B.B.'s e-mail by not moving to advance the trial to a date within the statutory deadline. As noted above, as the party asserting equitable estoppel, Anand had the burden of establishing all of its elements, and one of those elements is that she "relied on the other

24

party's conduct to [her] detriment." (*Gaines, supra*, 62 Cal.4th at p. 1097.) There is simply no evidence that Anand detrimentally relied on the August 2022 e-mail.

In her brief, Anand complains, "CDCR refrained from questioning or opposing the July 2024 trial date for 15 months after it was set" and never "stated . . . that it would not waive the five-year deadline" until after the deadline had passed. Based on these statements, Anand may contend that, after CDCR sent the August 2022 e-mail noting the 2024 dates were beyond the deadline, it had an obligation to expressly state it would not waive the deadline, and in the absence of such an express statement, she was entitled to assume it would waive the deadline and to rely on that assumption. She cites no authority for such a contention, and we are aware of none.

We note that, in an analogous context, courts have held that although " ' "as a matter of professional courtesy" ' " defense counsel should give opposing counsel notice before taking the default of a represented party, " ' "counsel [is] *under no legal obligation to do so*." ' " (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 701, 702; see also *Bellm v. Bellia* (1984) 150 Cal.App.3d 1036, 1038.) As a result, "By taking a default without giving notice, counsel took the risk that the trial court would grant relief from the default [citation], but the failure to notify did not *require* the court to grant relief." (*Bellm*, at p. 1038.) We believe similar reasoning applies here. CDCR was under no legal obligation to tell Anand it would not waive the statutory deadline, and we decline to hold its mere silence can be found to have *reasonably* justified her in assuming it would waive the deadline. (*Brown v. Chiang*, *supra*, 198 Cal.App.4th at p. 1227 ["In order to invoke the doctrine of equitable estoppel, the reliance must be reasonable"].)

As for J.H.'s November 2023 e-mail, we note that, at the time it was sent, (1) the trial was scheduled for July 2, 2024, and (2) the five-year six-month deadline to bring the action to trial pursuant to section 583.310 and emergency rule 10(a) had already passed (the deadline was August 9, 2023). In early November, Anand's counsel e-mailed CDCR's counsel to request available dates to depose several witnesses. On November 7,

J.H. responded, "We appreciate your patience. [B.B.'s] return date is still uncertain. *I will check with CDCR to see if it will stipulate to a continuance of the trial date* and all related dates to provide the parties with more time to complete discovery to make up for the delay caused by the transition to new defense counsel and her leave, if Plaintiff is interested. Please let me know." (Italics added.) In her declaration in support of CDCR's motion to dismiss, J.H. stated she was unaware when she sent the e-mail that CDCR had not agreed to the July 2, 2024, trial date.

Although Anand cites J.H.'s e-mail in the estoppel section of her brief, she provides little analysis of it. She writes, "The key here is not whether [J.H.] intentionally or carelessly made those representations, but the effect they reasonably had on Anand." It is not entirely clear what "those representations" refers to. Importantly, we find nothing in the e-mail that suggests (or reasonably could be interpreted as suggesting) CDCR would agree to extend the statutory deadline. Instead, J.H. simply stated she was willing to check with CDCR to see if it would stipulate to continue the trial date. As the trial court found, there is nothing in this e-mail that would reasonably have lulled Anand "into believing that the five-year statute was inapplicable" or "was further extended."

Anand also contends J.H.'s e-mail contains a representation "that CDCR *might be willing* to 'stipulate to a continuance of the trial date.' " (Italics added.) We do not similarly interpret the e-mail. It is simply an offer by counsel to check with her client to ask if they were willing to stipulate to a continuance.

We end this case where we began. It was Anand's obligation "to monitor the case in the trial court, to keep track of relevant dates, and to determine whether any filing, scheduling, or calendaring errors have occurred." (*Jordan v. Superstar Sandcars, supra*, 182 Cal.App.4th at p. 1422.) It was also her obligation to take whatever actions were necessary to ensure " ' "that the action is brought to trial within the five-year period" ' " (*Wilcox v. Ford, supra*, 206 Cal.App.3d at p. 1175), and "to bend every reasonable effort to bring the matter to trial within five years" (*Griffis v. S. S. Kresge Co.* (1984)

26

150 Cal.App.3d 491, 497).  Moreover, she "cannot foist onto the court [or defense counsel her] responsibility to timely bring [her] case to trial.  That obligation lies *solely* on [Anand], who bore the responsibility to identify any problems concerning the scheduling of the trial and seek an order rescheduling the trial date to a date within the allotted five and one-half years." (*Oswald v. Landmark Builders, Inc.* (2023) 97 Cal.App.5th 240, 250.)  Nothing in B.B.'s August 2022 e-mail or J.H.'s November 2023 e-mail absolved her of those obligations or suggested CDCR would not hold her to them.  No basis for estoppel appears on this record.

## DISPOSITION

The judgment is affirmed.  CDCR shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
MESIWALA, J.

27